UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TIMOTHY CHEROTTI and ROSEBUD VENTURES LLC,
a New York limited liability company,

                    Plaintiffs,

-v-

EXPHAND, INC., a Delaware corporation, and FRANK NEMIROFSKY, individually and in his capacity as director and officer of Exphand, Inc.,

                    Defendants.

CIVIL ACTION NO.: 20 Civ. 11102 (SLC)

**OPINION AND ORDER**

**SARAH L. CAVE**, United States Magistrate Judge.[1]

## I. INTRODUCTION

On December 31, 2020, Plaintiffs Timothy Cherotti ("Cherotti") and Rosebud Ventures LLC ("Rosebud," together with Cherotti, "Plaintiffs") brought this action against Frank Nemirofsky ("Mr. Nemirofsky") and Exphand, Inc. ("Exphand," together with Mr. Nemirofsky, "Defendants"), alleging that Defendants misappropriated "at least $1,352,237.31 from Plaintiffs through coordinated deceitfulness intended to convince Plaintiffs into believing Defendants were engaged in legitimate business transactions when, in fact, Defendants were engaged in an ongoing scheme to swindle continuous rounds of investment from unsuspecting investors like Plaintiffs." (ECF No. 1 ¶ 1 (the "Complaint")). On September 17, 2021, after the Court entered a case management plan that, inter alia, set a schedule for the completion of discovery (ECF No. 27 (the "CMP")), Defendants filed a motion to dismiss the Complaint in its entirety. (ECF No. 42 (the "Motion to Dismiss"). On November 18, 2021, after opposing the Motion to Dismiss, Plaintiffs

---

[1] On May 24, 2021, the parties consented to Magistrate Judge jurisdiction for all purposes. (ECF No. 23).

filed a motion for leave to amend the Complaint. (ECF No. 50 (the "Motion to Amend")). On April 28, 2022, Plaintiffs filed a letter-motion for a discovery conference regarding their request to compel Mr. Nemirofsky to sit for a deposition. (ECF No. 81 (the "Discovery Conference Motion")). On May 10, 2022, after Mr. Nemirofsky failed to respond to the Discovery Conference Motion, Plaintiffs moved for entry of a certificate of default and a finding of contempt against Mr. Nemirofsky. (ECF No. 83 (the "Contempt Motion")).

For the reasons set forth below, the Motion to Amend is GRANTED IN PART and DENIED IN PART, the Motion to Dismiss is DENIED as moot, the Discovery Conference Motion is GRANTED, and the Contempt Motion is DENIED without prejudice.

## II. BACKGROUND

### A. Factual Background

The Court summarizes Plaintiffs' allegations in the Complaint, which the Court accepts as true for purposes of resolving the parties' motions. Mr. Nemirofsky is "the Chief Executive Officer, President and Secretary of Exphand[.]" (ECF No. 1 ¶ 11). "Since 2002, Defendants have held themselves out as being in the telecommunications and mobile device advertisement business." (Id. ¶ 14). "Defendants have represented that their business is based, in large part, on their patented technology." (Id. ¶ 15).

"In or about 2018, Cherotti met [Mr.] Nemirofsky while attending an event in New York." (ECF No. 1 ¶ 16). Mr. Nemirofsky "learned that Cherotti had attained significant business success and was the founder of Rosebud, a private equity firm focused on investing in technology, healthcare and consumer services companies." (Id. ¶ 18). "At that time, [Mr.] Nemirofsky represented to Plaintiffs that Exphand held unencumbered right, title and interest in and to a

2

patent portfolio valued at that time in excess of $200 million." (Id. ¶ 19). "Immediately thereafter, Defendants solicited investment from Plaintiffs." (Id.) "On or about March 7, 2018, based on the representations made by Defendants, Plaintiffs invested $500,000.00 in Exphand." (Id. ¶ 20).

"In or about October 2018, Plaintiffs were asked by Defendants to pay for certain legal fees being incurred by Defendants to the law firm of Allegaert, Berger & Vogel, LLP ('ABV')[.]" (ECF No. 1 ¶ 21). "Defendants represented to Plaintiffs that ABV was working to resolve a lawsuit filed against Defendants and Cherotti based on his alleged affiliation with Exphand as a member of its Board of Directors[,]" even though "Cherotti was never a member of the Board of Directors of Exphand." (Id. ¶¶ 23, 24). "Plaintiffs advanced the ABV legal expenses in that suit and caused to be paid $10,000.00 in November 2018 and another $10,000.00 in January 2019 for the benefit of the Defendants." (Id. ¶ 22).

"The lawsuit was entitled Homic et al. v. Exphand, Inc. et al, in the United States District Court for the Northern District of New York (the 'Homic Lawsuit')." (ECF No. 1 ¶ 25). The Homic Lawsuit plaintiffs "sought damages for breach of convertible notes that had matured, but had yet to be paid or otherwise converted" (the "Homic Notes")). (Id. ¶ 26).

"Defendants asked that Plaintiffs acquire" the Homic Notes to resolve the Homic Lawsuit. (ECF No. 1 ¶ 28). "At that time, Defendants continued to represent to Plaintiffs that Exphand's patent rights were valued in excess of $200 million." (Id. ¶ 27). "Plaintiffs agreed to acquire the Homic Notes in full settlement of the Homic Lawsuit for $267,237.31, in reliance on Defendants' representations about the value of Exphand's patent rights." (Id. ¶ 29). On April 1, 2019, Cherotti purchased the Homic Notes, which had "a face value of approximately $282,919.00 at that time."

(Id. ¶¶ 30–31). "Cherotti would not have purchased the Homic Notes, but for Defendants' false, misleading and deceptive representations regarding the value of Exphand, among other things." (Id. ¶ 32).

Between July 1, 2019 and June 18, 2020, Plaintiffs loaned Defendants $565,000, which Defendants "promised to repay." (ECF No. 1 ¶¶ 35–39). "To date, Defendants have failed to issue a single distribution or dividend to Plaintiffs[,]" and "have failed to make any payments under the loans to Plaintiffs." (Id. ¶¶ 40–41).

In the Complaint, Plaintiffs asserted the following causes of action: (i) breach of contract; (ii) breach of fiduciary duty against Mr. Nemirofsky; (iii) unjust enrichment; (iv) conversion; (v) negligent misrepresentation against Nemirofsky; (vi) violation of New York Debtor and Creditor Law § 276; (vii) entry of an equitable lien on Exphand's assets; and (viii) entry of a constructive trust "on Exphand's and any other assets into which Plaintiffs' funds can be traced, including those of [Mr.] Nemirofsky[.]" (ECF No. 1 ¶¶ 42–111).

B. **Procedural History**

On December 31, 2020, Plaintiffs filed the Complaint. (ECF No. 1). On March 17, 2021, Defendants filed a letter regarding their intent to file the Motion to Dismiss the Complaint in its entirety. (ECF No. 18). On June 16, 2021, the parties filed a proposed case management plan providing, inter alia, that all fact discovery be completed by December 15, 2021, and all expert discovery be completed by January 3, 2022. (ECF No. 26).

On June 23, 2021, the Court held an initial case management conference and entered the CMP. (ECF min. entry June 23, 2021; ECF No. 27). In the CMP, the Court adopted the parties'

proposed December 15, 2021 fact discovery deadline. (ECF No. 27 ¶ 1(d)).[2] The Court also directed Defendants to file the Motion to Dismiss by July 23, 2021. (Id. ¶ 2(a)). Plaintiffs were directed to file either an amended complaint or an opposition to the Motion to Dismiss by August 23, 2021. (Id. ¶ 2(b)).[3] Contemplating that a ruling on the Motion to Dismiss could necessitate additional fact discovery and inform the scope of expert discovery, the Court directed the parties to file "a proposed schedule for the completion of any additional fact discovery on the remaining claims and for the completion of expert discovery" within 21 days of the Court's decision on the Motion to Dismiss. (Id. ¶ 5).

On July 21, 2021, Defendants asked the Court to extend their deadline to file the Motion to Dismiss pending the outcome of the parties' anticipated settlement conference before the Honorable Kevin Nathanial Fox. (ECF No. 32). On July 22, 2021, the Court granted Defendants' request, and directed them to advise the Court by September 9, 2021 whether they still intended to file the Motion to Dismiss and, if so, to propose a briefing schedule. (ECF No. 33 at 2). On September 21, 2021, Judge Fox held a settlement conference, but the parties did not reach an agreement. (ECF min. entry Sept. 21, 2021).

1. **The Motion to Dismiss**

On September 17, 2021, Defendants filed the Motion to Dismiss. (ECF No. 42). Defendants argued that Plaintiffs' claims were "meritless, because the value of the patents at the

---

[2] On February 4, 2022, the Court extended the deadline to complete all discovery to March 4, 2022. (ECF No. 64 at 2).
[3] The CMP also set deadlines for Defendants to file any anticipated counterclaims, and for any subsequent motion to dismiss those counterclaims. (ECF No. 27 ¶ 3–4). On August 6, 2021, the Court extended this schedule at Defendants' request. (ECF No. 35). Defendants neither filed any counterclaims nor requested a further extension of time to do so.

5

time of the representations made in 2018 was $247 million, which is more than the $200 million that Defendants referenced." (ECF No. 43 at 9).[4]  To support this argument, Defendants submitted a copy of a May 5, 2016 valuation of Exphand performed by Bay Valuation Advisors ("BVA"), which opined that "the Fair Value of the total equity of expHand [was] reasonably estimated as" $247 million as of March 31, 2016 (ECF No. 44-1 at 31), i.e., greater than the $200 million that Defendants had represented to Plaintiffs in 2018.  Accordingly, Defendants reasoned, "[b]ecause Defendants' representations on the value of their patents were true, all of Plaintiffs' claims stemming from this alleged misrepresentation must be dismissed." (ECF No. 43 at 10 (emphasis added) (internal citation omitted)).  Defendants also argued, inter alia, that the Complaint did not contain "any allegations that Defendants would repay" the ABV legal expenses or "that Defendants promised to repay Plaintiffs for acquiring the Homic Notes." (Id. at 11).

On October 1, 2021, Plaintiffs opposed the Motion to Dismiss. (ECF No. 45).  In addition to arguing that they had stated a claim for relief (id. at 19–23), Plaintiffs contended that they should be granted leave to file an amended complaint "[i]f the Court determines that Plaintiffs have not stated their case sufficiently[.]" (Id. at 7).

### 2. The Motion to Amend and Proposed First Amended Complaint

On November 5, 2021, Plaintiffs filed a motion for leave to file a first amended complaint. (ECF No. 48).  On November 8, 2021, the Court denied Plaintiffs' request without prejudice to renewal, based on Plaintiffs' failure to include a copy of, or any other information about, their proposed amended pleading. (ECF No. 49).

On November 18, 2021, Plaintiffs filed the Motion to Amend and a copy of the Proposed

---

[4] Citations to page numbers refer to the ECF-assigned page number, unless otherwise noted.

First Amended Complaint ("PFAC"). (ECF Nos. 50, 51; see also ECF Nos. 55, 57).[5] Plaintiffs argue that the PFAC "rectifies the alleged deficiencies in the" Complaint. (ECF No. 55 at 2). Specifically, Plaintiffs argue:

> The thrust of the original Complaint was that Cherotti had invested funds in [Exphand] and that [Mr. Nemirofsky] had misled Cherotti as to the strength of that investment. But the more accurate nature of Cherotti's claim is that he was wrongfully induced to loan money to [Mr.] Nemirofsky and his wife, Marie Nemirofsky ["Mrs. Nemirofsky"], on the false promises of repayment.

Id. at 2 (internal citations omitted).

The PFAC includes allegations that Mr. Nemirofsky "asked Cherotti to treat him as a 'father figure'" and that he and "Mrs. Nemirofsky encouraged Cherotti to refer to them as 'Dad' and 'Mom', respectively, and they referred to Cherotti as their 'Son'." (ECF No. 51 ¶ 9). At some point, Mr. "and Mrs. Nemirofsky informed Cherotti that they were experiencing some short-term cash flow problems and they asked Cherotti for a loan." (Id. ¶ 14). They "assured Cherotti that the money would be paid back shortly, and promised that instead of paying interest on the loan, they would instead tender to him equity in Exphand." (Id. ¶ 15). They also "informed Cherotti that due to the very close relationship between them, which was based on trust, there was no need for any paperwork to document the loan." (Id. ¶ 16). Plaintiffs also allege that, "[f]aced with the Homic [Lawsuit], [Mr.] Nemirofsky and Mrs. Nemirofsky asked Cherotti for another loan" that "would take the form of Cherotti purchasing the [Homic Notes] and the payoff of [ABV]." (Id. ¶ 20). "Again, they assured Cherotti that he would be promptly paid back for the principal of the loan, plus he would receive Exphand stock as interest, and that he could trust them on these

---

[5] Plaintiffs Motion to Amend failed to include the exhibits referenced in the PFAC and a memorandum of law. (See ECF Nos. 50, 51). On December 9, 2021, at the Court's direction (ECF No. 56), Plaintiffs filed a memorandum of law (ECF No. 55) and the exhibits to the PFAC (ECF Nos. 57 – 57-5).

7

promises like the 'surrogate parents' that they had become." (Id.)  Then, "from July, 2019 through June, 2020, [Mr.] Nemirofsky and Mrs. Nemirofsky asked Cherotti for still more loans[,]" and "continued to assure him that they saw him as 'the son we never had' and that they would promptly pay back all of the loaned funds." (Id. ¶ 22).

Plaintiffs allege that, "over the course of more than two years, [Mr.] Nemirofsky and Mrs. Nemirofsky induced Cherotti to loan them the total of $1,352,237.31." (ECF No. 51 ¶ 23). In support of this allegation, Plaintiffs annex to the PFAC copies of documents showing "the wires and bank statements showing the remittances of $1,352,237.31." (Id.; see ECF No. 57-3). The PFAC also includes copies of the Homic Notes. (ECF No. 57).

Based on these allegations, Plaintiffs seek to add Mrs. Nemirofsky as a Defendant "because she actively engaged in developing and grooming Cherotti into the confidences of her and [Mr. Nemirofsky]." (ECF No. 51). They also seek to remove Rosebud as a Plaintiff "because all of the funds that were wired came from Cherotti, not Rosebud." (ECF No. 55 at 2–3). With respect to the causes of action, Plaintiffs seek to withdraw their claims for breach of fiduciary duty and negligent misrepresentation, and to add claims for fraud and civil conspiracy under New York law. (ECF No. 51 ¶¶ 37–70; see ECF No. 55 at 2). Plaintiffs assert the civil conspiracy claim "in order to connect [the] actions of [Mr. and Mrs. Nemirofsky] to [the] underlying torts and wrongful conduct." (ECF No. 51 ¶ 68).

Plaintiffs argue that granting leave to amend would not substantially prejudice Defendants. (ECF No. 55 at 1). Plaintiffs note that "[n]o depositions have been taken, and the [D]efendants have not answered interrogatories or produced documents in response to Cherotti's written requests." (Id.)

On December 2, 2021, Defendants opposed the Motion to Amend.  (ECF No. 52).  As a threshold issue, Defendants argue that the "good cause" standard in Federal Rule of Civil Procedure 16(b) governs the Motion to Amend because the CMP "fixed" Plaintiffs' deadline to amend the Complaint.  (Id. at 13–15).  They claim that Plaintiffs cannot show good cause for seeking leave to amend after this deadline because, "[a]t the time Plaintiffs filed their Original Complaint, Plaintiffs had all of the information necessary to plead the claims they now seek to assert in the [P]FAC."  (Id. at 15).

Defendants also oppose the Motion to Amend under Federal Rule of Civil Procedure 15(a)(2) on grounds of prejudice, undue delay, bad faith, and futility.  (ECF No. 52 at 15–23).  Specifically, Defendants ague that, "where discovery has already begun, demands have been propounded and responded to by Plaintiffs, and a motion to dismiss has been fully briefed and submitted," granting leave to amend "would require the Defendants to expend significant additional resources to re-do discovery, [and] move again to dismiss Plaintiffs['] frivolous claims, which would significantly delay the resolution of the dispute and unduly prejudice the Defendants."  (Id. at 21).  With respect to undue delay, Defendants argue that Plaintiffs have not provided "any reasoning to explain why they delayed in seeking to amend the Original Complaint" eleven months are it was filed.  (Id. at 21–22).  To support their argument that Plaintiffs made the Motion to Amend in bad faith, Defendants argue that, by seeking "to reclassify investments as loans[,]" Plaintiffs are "changing material facts within the Complaint."  (Id. at 23).

Defendants raise several arguments as to the alleged futility of the Motion to Amend.  They argue that adding Mrs. Nemirofsky as a Defendant would be futile, because "there is no new evidence that would implicate [her] in this action."  (ECF No. 52 at 16).  They note that

Mrs. Nemirofsky "is not nor was she ever involved in ExpHand[,]" and argue that "[t]he only reason as to why [she] is being added to this Action, is to harass Defendants, embarrass Defendants and to try and force Defendants into settling this frivolous lawsuit." (Id.) Defendants also argue that Plaintiffs' request to add a claim for fraud is futile because it is based "solely on self-serving conclusory allegations." (Id. at 19). More specifically, they argue that, as a "prolific businessman," Cherotti "would never 'loan' anyone $1.3 million without documentary proof, and he was promised to be repaid, surely there would be documentary support[.]" (Id.) Similarly, Defendants argue that granting Plaintiffs leave to add the proposed civil conspiracy claim would be futile because civil conspiracy "is not an independent tort, but rather a means for imposing liability of non-actors," and because Plaintiffs "have not pled any facts suggesting that [Mr.] Nemirofsky and [Mrs. Nemirofsky] entered into a 'corrupt agreement' or that they took any action to intentionally further such an agreement[.]" (Id. at 20).

### 3. **Withdrawal of Defendants' Counsel and Entry of Default Against Exphand**

On February 23, 2022, Defendants' counsel moved to withdraw based on Defendants' non-payment of legal fees. (ECF No. 65 (the "Withdrawal Motion")). Counsel argued, inter alia, that granting the Withdrawal Motion would not prejudice Defendants because it was made "before any discovery has occurred[.]" (ECF No. 66 at 5). On February 24, 2022, the Court directed Defendants to respond to the Withdrawal Motion by March 10, 2022. (ECF No. 68 (the "Feb. 24 Order")). The Court advised Defendants that, by law, corporations cannot proceed pro se, and that, in the event the Withdrawal Motion was granted, Exphand's failure to retain new counsel could lead to entry of a certificate of default and a default judgment. (Id. at 2). The Court adjourned the discovery deadline sine die, pending resolution of the Withdrawal

Motion. (Id.) On February 25, 2022, counsel served the Withdrawal Motion and the Feb. 24 Order on Defendants. (ECF No. 71).

On March 21, 2022, having received no response from Defendants, the Court granted the Withdrawal Motion. (ECF No. 72 at 1). The Court reiterated its warning to Exphand, and directed new counsel to file a notice of appearance by April 4, 2022. (Id.). The discovery deadline remained adjourned sine die, pending the appearance of Defendants' new counsel. (Id.) On April 7, 2022, no new counsel having appeared, the Clerk of Court entered a certificate of Default against Exphand. (ECF No. 80 (the "Certificate of Default")).

### 4. The Discovery Conference and Contempt Motions

On April 28, 2022, Plaintiffs filed the Discovery Conference Motion. (ECF No. 81). On April 29, 2022, the Court directed Mr. Nemirofsky to respond to the motion by May 6, 2022. (ECF No. 82). On May 10, 2022, after Mr. Nemirofsky failed to respond, Plaintiffs filed the Contempt Motion against Mr. Nemirofsky. (ECF No. 83). On May 13, 2022, attorney George M. Gavalas filed a notice of appearance on behalf of Defendants. (ECF No. 85).

### III. LEGAL STANDARDS

#### A. Leave to Amend

Determining whether a motion to amend is governed by Rule 15 or Rule 16 turns on whether "the motion is timely filed under [the] scheduling order in place in th[e] action. If it is timely filed, only Rule 15's liberal standard governs; if it is not, [the moving party] must also show good cause for the amendment under Rule 16." Soroof Trading Dev. Co. v. GE Microgen, Inc., 283 F.R.D. 142, 147 (S.D.N.Y. 2012) (requiring motion to amend filed after court-ordered deadline to meet requirements of both Rule 15(a)(2) and Rule 16(b)(4)).

1. **Rule 15(a)(2)**

Federal Rule of Civil Procedure 15 provides that a court "should freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Rule encourages courts to determine claims "on the merits" rather than disposing of claims or defenses based on "mere technicalities." Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 283 (2d Cir. 2000) (citation omitted). The Second Circuit has explained that "district courts should not deny leave [to amend] unless there is a substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility." Friedl v. City of New York, 210 F.3d 79, 87 (2d Cir. 2000); see also McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) ("A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."). "Consistent with the liberal principles underlying Rule 15(a)(2), the party opposing the amendment has the burden of establishing that leave to amend would be unduly prejudicial or futile." Pilkington N. Am., Inc v. Mitsui Sumitomo Ins. Co. of Am., No. 18 Civ. 8152 (JFK), 2021 WL 4991422, at *5 (S.D.N.Y. Oct. 27, 2021) (citing Ho Myung Moolsan Co. v. Manitou Min. Water, Inc., 665 F. Supp. 2d 239, 250 (S.D.N.Y. 2009)).

"Where a plaintiff seeks to amend its complaint while a motion to dismiss is pending, a court 'may either deny the pending motion to dismiss as moot or consider the merits of the motion, analyzing the facts as alleged in the amended pleading.'" Cotto v. Fed. Nat'l Mortg. Ass'n, No. 20 Civ. 6487 (MKV), 2021 WL 4340668, at *4 (S.D.N.Y. Sept. 22, 2021) (quoting Pettaway v. Nat'l Recovery Sols., LLC, 955 F.3d 299, 303 (2d Cir. 2020)) (alterations omitted). "While there are two options, the preferred course is to grant leave to amend even if doing so renders moot

the motion to dismiss, rather than granting the motion to dismiss and rendering moot the motion for leave." Id. (citation omitted).

### 2. Rule 16(b)

Federal Rule of Civil Procedure 16(b)(4) states that a court-ordered schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "[W]hen a scheduling order has been entered which has restricted a party's ability to file an amended complaint, Rule 15's liberal standard must be balanced against the more stringent standard of Rule 16, under which such an order 'may be modified only for good cause.'" Perfect Pearl Co. v. Majestic Pearl & Stone, Inc., 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 16(b)(4)). Courts in this District have held that a party cannot establish good cause where "the proposed amendment rests on information that the party knew, or should have known" before the deadline to amend. Id. (citation omitted). In general, "[b]ecause compliance with Rule 16 is a threshold matter which may obviate the Rule 15 analysis," the Court should address it first. Id.

## IV. DISCUSSION

### A. Motion to Amend

#### 1. Rule 16(b) Does Not Apply

Contrary to Defendants' argument (ECF No. 52 at 13–15), Rule 16(b)'s "good cause" standard has no bearing on Plaintiffs' Motion to Amend. "[T]he Second Circuit [has] recognized that 'the Rule 16(b) 'good cause' standard, rather than the more lenient standard of Rule 15(a), governs a motion to amend filed after the deadline a district court has set for amending the pleadings." Pilkington, 2021 WL 4991422, at *5 (quoting Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000)). The Second Circuit recently explained that "[t]he period of 'liberal'

13

amendment [under Rule 15] ends if the district court issues a scheduling order setting a date after which no amendment will be permitted." Sacerdote v. New York Univ., 9 F.4th 95, 115 (2d Cir. 2021) (emphasis added), cert. denied, 142 S. Ct. 1112, 212 L. Ed. 2d 9 (2022).  Here, the CMP (ECF No. 27) set no such deadline, i.e., a "date after which all amendments were prohibited, which would have triggered the stricter Rule 16(b)(4) 'good cause' standard thereafter." Id. Accordingly, the more lenient standard of Rule 15(a)(2) governs Plaintiffs' Motion to Amend.

### B. Rule 15(a)(2)

Faced with the options discussed above (see § III.A supra), the Court elects to grant the Motion to Amend in part, and to deny the Motion to Dismiss as moot.  "[T]his is the preferred course where[, as here,] the amended complaint requires leave of court."  Cotto, 2021 WL 4340668, at *5.  Moreover, "granting leave to amend is consistent with the liberal standard of Rule[ ] 15 . . . , and with the Second Circuit's 'strong preference for resolving disputes on the merits.'" Patterson v. Morgan Stanley, No. 16 Civ. 6568 (RJS), 2017 WL 11569235, at *2 (S.D.N.Y. Sept. 27, 2017) (quoting Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 190 (2d Cir. 2015)).  This course is particularly warranted here, given a fundamental flaw in Defendants' Motion to Dismiss, i.e., its reliance on a document outside the pleadings—the BVA valuation—that the Court cannot consider in deciding whether Plaintiffs have stated a claim for relief.  (See ECF No. 43 at 9) (arguing that "the entire [Complaint] is meritless, because the value of the patents at the time of the representations made in 2018 was $247 million, which is more than the $200 million that Defendants referenced").  See Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (holding that, in limited circumstances not present here, courts cannot consider allegations or materials outside of a complaint when evaluating a motion to dismiss).

Moreover, Defendants have failed to establish that there is "good reason" to deny the Motion to Amend based on prejudice, undue delay, or bad faith. McCarthy, 482 F.3d at 200. Defendants' argument that granting the Motion to Amend would prejudicially force them to "re-do discovery" rings hollow, since it appears little to no discovery has been completed. (ECF No. 51 at 21). Defendants' counsel argued that granting the Withdrawal Motion—filed three months after the Motion to Amend—would not prejudice Defendants because it was made "before any discovery has occurred[.]" (ECF No. 66 at 5). Similarly, Defendants have not established that Plaintiffs have acted with undue delay or in bad faith, where they sought leave to amend two weeks after the Motion to Dismiss was fully briefed, and where the case, despite pending for nearly a year and a half, is still in the discovery stage. (See ECF Nos. 46, 48). C.f. Bank v. Spark Energy, LLC, No. 19 Civ. 4478 (PKC) (LB), 2020 WL 6873436, at *2 (E.D.N.Y. Nov. 23, 2020) (noting that "a court may find bad faith under Rule 15(a) where a party deliberately waited to see how they would fare on the prior motion to dismiss before requesting leave to amend" or "when a party withholds facts clearly known to it prior to the filing of the complaint, particularly when done for some ulterior purpose, unless satisfactory explanation clearly shows a lack of bad faith") (citations and alterations omitted), aff'd, 860 F. App'x 205 (2d Cir. 2021).

Defendants' futility argument as to Plaintiffs' proposed fraud claim is equally unpersuasive. As discussed above, Defendants argue that Plaintiffs' request to add a claim for fraud is futile because, as a "prolific businessman," Cherotti "would never 'loan' anyone $1.3 million without documentary proof, and he was promised to be repaid, surely there would be documentary support[.]" (ECF No. 52 at 19). This argument, however, does not attack the legal sufficiency of Plaintiffs' allegations but rather their truthfulness, which the Court does not

15

decide at this stage of the litigation. See Chan Ah Wah v. HSBC N. Am. Holdings Inc., No. 15 Civ. 8974 (LGS), 2017 WL 2417854, at *2 (S.D.N.Y. June 5, 2017) (noting that, in deciding a motion for leave to amend a complaint, "a court accepts as true all factual allegations and draws all reasonable inference in the plaintiff's favor") (citing Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt., 843 F.3d 561, 566 (2d Cir. 2016)).

The Court agrees with Defendants, however, that Plaintiffs' requests to add Mrs. Nemirofsky as a defendant and to add a claim for civil conspiracy are futile. (ECF No. 52 at 16, 20). As Defendants correctly point out, Plaintiffs fail to plausibly allege Mrs. Nemirofsky's involvement in any of the conduct underlying Plaintiffs' claims. Indeed, contrary to Plaintiffs' conclusory allegations that Cherotti lent money to both Mr. and Mrs. Nemirofsky, the documents annexed to the PFAC reflect that Mrs. Nemirofsky had no involvement in these financial transactions. (See e.g., ECF No. 57-3 at 1 (bank statement reflecting $500,000 wire transfer from Cherotti to Exphand); id. at 3 (bank statement reflecting $10,000 wire transfer from Cherotti to Exphand); id. at 4 (same); id. at 3 (bank statement reflecting $10,000 wire transfer from Cherotti to Exphand); id. at 5 (bank statement reflecting $267,237.31 wire transfer from Cherotti to ABV); id. at 7 (bank statement reflecting $25,000 wire transfer from Cherotti to Exphand).

As to the civil conspiracy claim, Defendants correctly argue that Plaintiffs "have not pled any facts suggesting that [Mr.] Nemirofsky and [Mrs. Nemirofsky] entered into a 'corrupt agreement' or that they took any action to intentionally further such an agreement[.]" (ECF No. 52 at 20). See McSpedon v. Levine, 158 A.D.3d 618, 621, 72 N.Y.S.3d 97 (2d Dep't 2018) (noting that "New York does not recognize civil conspiracy to commit a tort as an independent cause of action" and that, "[u]nder New York law, in order to properly plead a cause of action to

16

recover damages for civil conspiracy, the plaintiff must allege a cognizable tort, coupled with an agreement between the conspirators regarding the tort, and an overt action in furtherance of the agreement") (citation and alterations omitted).

### V. CONCLUSION

For the reasons set forth above:

1. Plaintiffs' Motion to Amend (ECF No. 50) is GRANTED IN PART and DENIED IN PART as follows:

    a. Plaintiffs' requests to amend to add (i) Mrs. Nemirofsky as a defendant and (ii) a claim for civil conspiracy under New York Law are DENIED as futile;

    b. The Motion to Amend is otherwise GRANTED, including as to Plaintiffs' request to remove Rosebud as a Plaintiff. Rosebud's claims are dismissed without prejudice pursuant to Fed. R. Civ. P. 41(a)(2). By **June 17, 2022**, Cherotti shall file the FAC, revised in accordance with the terms of this Opinion and Order. Pursuant to Fed. R. Civ. P. 15(a)(3), Defendants shall answer, move, or otherwise respond to the FAC **within fourteen days of service**.

2. Defendants' Motion to Dismiss (ECF No. 42) is DENIED as moot;

3. In anticipation of the forthcoming FAC and the appearance of counsel for Defendant Exphand (ECF No. 85), the Certificate of Default entered against Exphand is VACATED.

4. Plaintiffs' Discovery Conference Motion (ECF No. 81) is GRANTED, and a telephone conference is scheduled for **Tuesday, July 19, 2022 at 2:00 pm** on the Court's conference line. The parties are directed to call: (866) 390-1828; access code: 380-9799, at the scheduled time. The parties shall meet and confer and, by **July 15, 2022**,

17

  file a proposed schedule for the completion of any remaining fact and expert discovery; and

5. Given the appearance of counsel for Mr. Nemirofsky (ECF No. 85), Plaintiffs' Contempt Motion against Mr. Nemirofsky (ECF No. 83) is DENIED without prejudice.

The Clerk of Court is respectfully directed to vacate the Certificate of Default at ECF No. 80, amend the docket to reflect Mr. Gavalas' appearance on behalf of Defendants (ECF No. 85), and close ECF Nos. 42, 81, and 83.

Dated: New York, New York
    June 10, 2022

                     *[signature]*
                     **SARAH L. CAVE**
                     **United States Magistrate Judge**