UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIMOTHY CHEROTTI,<br><br>                              Plaintiff,<br><br>     -v-<br><br>EXPHAND, INC., a Delaware corporation, and FRANK NEMIROFSKY, individually and in his capacity as director and officer of Exphand, Inc.,<br><br>                              Defendants. | CIVIL ACTION NO.: 20 Civ. 11102 (SLC)<br><br>**OPINION AND ORDER** |

**SARAH L. CAVE**, United States Magistrate Judge.[1]

## I. INTRODUCTION

On December 31, 2020, Plaintiff Timothy Cherotti ("Cherotti") brought this action against Frank Nemirofsky ("Nemirofsky") and Exphand, Inc. ("Exphand," with Nemirofsky, "Defendants"), alleging that Defendants misappropriated over $1.3 million from him   (ECF No. 1 ¶ 1 (the "Complaint")).[2]   Although they initially appeared and defended themselves, Defendants subsequently failed to participate in discovery, respond to Court orders, or otherwise continue to participate in this action, and the Clerk of Court has entered a certificate of default against them.   Now before the Court is Cherotti's motion for default judgment.   (ECF No. 115 (the "Motion")).[3]

For the reasons set forth below, the Motion is GRANTED IN PART and DENIED IN PART.

---

[1] On May 24, 2021, the parties consented to Magistrate Judge jurisdiction for all purposes.  (ECF No. 23).

[2] The Complaint also named as a plaintiff Rosebud Ventures LLC ("Rosebud," with Cherotti, the "Original Plaintiffs"), a New York limited liability company founded by Cherotti.  (ECF No. 1 ¶¶ 7, 18).  On June 10, 2022, at Cherotti's request, the Court dismissed Rosebud's claims without prejudice.  (ECF No. 86 at 8, 17; see ECF No. 50 at 2).

[3] Cherotti does not specify the Federal Rule of Civil Procedure under which he seeks entry of default judgment.  As discussed below, the Court analyzes the Motion under Rules 16 and 37.  (See §§ IV.A–B infra).

## II. **BACKGROUND**

### A.  **Factual Background**

The Court draws the facts from Cherotti's amended complaint.  (ECF No. 89 (the "Amended Complaint")).  Given Defendants' default, the Court accepts as true all well-pleaded factual allegations in the Amended Complaint, except as to damages.  See City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.") (quoting Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004)); Whitehead v. Mix Unit, LLC, No. 17 Civ. 9476 (VSB) (JLC), 2019 WL 384446, at *1 (S.D.N.Y. Jan. 31, 2019).[4]  "This principle applies regardless of whether default is entered as a discovery sanction or for failure to defend."  Walpert v. Jaffrey, 127 F. Supp. 3d 105, 129 (S.D.N.Y. 2015).

Nemirofsky, a California citizen, is the Chief Executive Officer, President, and Secretary of Exphand, a Delaware corporation with its principal place of business in Delaware. (ECF No. 89 ¶¶ 2–3).  "[D]efendants are actively doing business in New York, and/or receiving funds directly and indirectly from persons and entities in New York."  (Id. ¶ 4).

In 2018, Cherotti, a New York citizen, "met Nemirofsky while attending an event in New York."  (Id. ¶¶ 1, 5).  "Cherotti and Nemirofsky became friends[,]" and "[t]he friendship became very close."  (Id. ¶¶ 6–7).  "Nemirofsky began to serve as a mentor to Cherotti . . . [,] asked Cherotti to treat him as a 'father figure' . . . [, and] told Cherotti that he saw him like the son he never had."  (Id. ¶¶ 7–9).  "Nemirofsky [also] discussed Exphand's business with Cherotti," and

---

[4] Unless otherwise indicated, all internal citations and quotation marks are omitted from case citations.

"represented that Exphand was very valuable."  (Id. ¶ 11).  "Nemirofsky told Cherotti that because they had developed such mutual trust he wanted Cherotti to serve as a director of Exphand."  (Id. ¶12).  "[U]nbeknownst to Cherotti," however, "Nemirofsky was gaining the trust, confidence and familial affection of Cherotti for the unlawful purpose of extracting money from him."  (Id. ¶ 10).

At some later point in 2018, "Nemirofsky informed Cherotti that he was experiencing some short-term cash flow problems and asked Cherotti for a loan . . . to help alleviate some of Exphand's short-term cash needs."  (ECF No. 89 ¶ 13).  "Nemirofsky assured Cherotti that the money would be paid back shortly, and promised that instead of paying interest on the loan, he would instead tender to him equity in Exphand."  (Id. ¶ 14).  "Nemirofsky informed Cherotti that due to the very close relationship between them, which was based on trust, there was no need for any paperwork to document the loan."  (Id. ¶ 15).  On March 7, 2018, "[i]n reliance on the promises, assurances and representations of Nemirofsky, . . . Cherotti loaned $500,000 to the [D]efendants."  (Id. ¶ 16; see id. at 121–22).

In November 2018, a group of four individuals (the "Lenders") sued Exphand and its directors and officers (the "Lawsuit") for non-payment of promissory notes that Exphand had issued and that "provided for aggregate repayment of approximately $267,237.31" (the "Notes").  (ECF No. 89 ¶ 17; see id. at 83–112).  In the Lawsuit, the Lenders alleged that, "[b]eginning around 2003, Nemirofsky began soliciting investments [in Exphand] from investors by falsely representing that investor funds would be used for legitimate business purposes" but, in reality, "Nemirofsky was converting investors' money to fund a lavish lifestyle."  (Id. ¶ 29).  The Lawsuit named Cherotti as a defendant based on his alleged capacity as "a director, officer and 'control

person' of Exphand."  (Id. ¶ 18).  Nemirofsky asked Cherotti for another loan, which "would take the form of Cherotti purchasing the [N]otes . . . and the payoff of the defense attorneys."  (Id.) Nemirofsky "assured Cherotti that he would be promptly paid back for the principal of the loan, plus he would receive Exphand stock as interest[.]"  (Id.)  In reliance on Nemirofsky's "promises, assurances and representations, Cherotti paid $20,000 of Exphand's legal bills (via a $10,000 wire on November 28, 2018 and another $10,000 wire on January 16, 2019) and paid $267,237.31 to purchase the [] Notes (via a wire on March 19, 2019)."  (Id. ¶ 20; see id. at 123–26).

Over the next year, between July 2019 and June 2020, Nemirofsky continued to seek loans from Cherotti, promising to pay them back "promptly."  (ECF No. 89 ¶ 21).  "In reliance on the promises, assurances and representations of Nemirofsky, Cherotti made still more loans to [Defendants] by the way of loaning them and their company an additional $565,000."  (Id.; see id. at 127–31).   Over   more than two years, Cherotti loaned Defendants a total of $1,352,237.31 (the "Loans").  (Id. ¶ 22).  Defendants, however, "never repaid Cherotti for any of the loans, . . . issued any stock or equity in Exphand to Cherotti, . . . [paid] Cherotti any amounts whatsoever for any services or loans[,] . . . issued and notes, promissory notes, mortgages, or other commercial paper to Cherotti[,] . . . [or] paid Cherotti on the [] Notes, despite the fact that they are past their maturity dates."  (Id. ¶¶ 23–27).

Cherotti alleges that he "is far from the first person to claim that Nemirofsky bilked them out of money by using Exphand as a 'sham' corporation and a 'Ponzi' scheme.'" (ECF No. 89 ¶ 28).  To support this allegation, Cherotti references a March 10, 2016 Memorandum Opinion and Findings of Fact (the "Opinion") issued by the United States Tax Court

in <u>Kaylan J. Riley v. Comm'r of Internal Revenue</u>, Case No. 22718-12L (Mar. 10, 2016).  (<u>Id.</u> ¶ 28;

<u>see</u> <u>id.</u> at 133–51).  The Opinion states, <u>inter</u> <u>alia</u>, that:

> Kaylan Riley paid over $1 million to Frank Nemirofsky, thinking that she was
> investing in a tech startup.  She began to suspect that he was using her money for
> other purposes.  In 2010, when the Commissioner came to collect Riley's unpaid
> taxes from 2008, she claimed that Nemirofsky had stolen her money [and that she
> would be entitled to a theft loss deduction that she could carry back to eliminate
> that liability.]

(<u>Id.</u> ¶ 28; <u>see</u> <u>id.</u> at 133–34).[5]  Cherotti alleges that, "[u]pon information and belief, the promises,

assurances and representations of Nemirofsky both on his own behalf and on behalf of Exphand,

were false and misleading, and were part of an ongoing scheme to induce unsuspecting people,

like Cherotti, Kaylan Riley, and the [] Lenders, to fund the lifestyle of Nemirofsky and his wife."

(<u>Id.</u> ¶ 30).

### B.  **Procedural History**

On December 31, 2020, the Original Plaintiffs, represented by Matthew Wagoner of The

Wagoner Firm PLLC ("Wagoner"), filed the Complaint, asserting claims for: (i) breach of contract

(the "Breach of Contract Claim"); (ii) breach of fiduciary duty against Nemirofsky; (iii) unjust

enrichment (the "Unjust Enrichment Claim"); (iv) conversion (the "Conversion Claim");

(v) negligent misrepresentation against Nemirofsky; (vi) fraudulent conveyance (the "Fraudulent

Conveyance Claim") under New York Debtor and Creditor Law ("DCL"); (vii) entry of an equitable

lien on Exphand's assets; and (viii) entry of a constructive trust "on Exphand's and any other

---

[5] Cherotti omits from the Amended Complaint the Opinion's findings that "the evidence in the case
doesn't show that Nemirofsky made false representations" and that "[t]he sparse record also prevents
Riley from showing that Nemirofsky had an intent to defraud her." (ECF No. 89 at 147).

assets into which Plaintiffs' funds can be traced, including those of Nemirofsky[.]"  (ECF No. 1 ¶¶ 42–111; see id. at 13).

On February 23, 2021, attorneys with the law firm Anderson Kill P.C. ("AK") filed notices of appearance on behalf of Defendants.  (ECF Nos. 14; 16; see ECF No. 25).  On March 17, 2021, Defendants stated their intent to file a motion to dismiss the Complaint in its entirety (the "MTD").  (ECF No. 18).  On June 16, 2021, the parties filed a proposed case management plan providing, inter alia, that all fact discovery be completed by December 15, 2021, and all expert discovery be completed by January 3, 2022.  (ECF No. 26).

On June 23, 2021, the Court held an initial case management conference and entered an initial case management plan (the "CMP") setting a December 15, 2021 fact discovery deadline.  (ECF min. entry June 23, 2021; ECF No. 27 ¶ 1(d)).[6]  The Court also directed Defendants to file the MTD by July 23, 2021, and the Original Plaintiffs to file either an amended complaint or an opposition to the MTD by August 23, 2021.  (ECF No. 27 ¶¶ 2(a)–(b).[7]  Contemplating that a ruling on the MTD could necessitate additional fact discovery and inform the scope of expert discovery, the Court directed the parties to file "a proposed schedule for the completion of any additional fact discovery on the remaining claims and for the completion of expert discovery" within 21 days of the Court's decision on the MTD.  (Id. ¶ 5).

---

[6] On February 4, 2022, the Court extended the deadline to complete all discovery to March 4, 2022. (ECF No. 64 at 2).
[7] The CMP also set deadlines for Defendants to file any anticipated counterclaims, and for any subsequent motion to dismiss those counterclaims.  (ECF No. 27 ¶ 3–4).  On August 6, 2021, the Court extended this schedule at Defendants' request.  (ECF No. 35).  Defendants neither filed any counterclaims nor requested a further extension of time to do so.

On July 21, 2021, attorney Jonathan Plaut ("Plaut") of the law firm Cohan Rasnick Plaut LLP ("CRP") filed a notice of appearance on behalf of the Original Plaintiffs.  (ECF No. 31).  That same day, Defendants asked the Court to extend their deadline to file the MTD pending the outcome of the parties' anticipated settlement conference before the Honorable Kevin Nathaniel Fox.  (ECF No. 32).  On July 22, 2021, the Court granted Defendants' request, and directed them to advise the Court by September 9, 2021 whether they still intended to file the MTD and, if so, to propose a briefing schedule.  (ECF No. 33 at 2).

On August 23, 2021, Wagoner moved to withdraw as counsel for the Original Plaintiffs, noting that "Cherotti ha[d] retained new counsel in this matter and ha[d] terminated [Wagoner's] services."  (ECF No 36).  On August 24, 2021, the Court granted Wagoner's motion.  (ECF No. 37).

On September 21, 2021, Judge Fox held a settlement conference, but the parties did not reach an agreement.  (ECF min. entry Sept. 21, 2021).

On September 17, 2021, Defendants filed the MTD, arguing, inter alia, that the Complaint did not contain "any allegations that Defendants would repay" or "promised to repay" the Loans.  (ECF No. 43 at 11).  On October 1, 2021, the Original Plaintiffs opposed the MTD, (ECF No. 45), and, on November 5, 2021, filed a motion for leave to file a first amended complaint.  (ECF No. 48).  On November 8, 2021, the Court denied the Original Plaintiffs' request without prejudice to renewal, based on their failure to include a copy of, or any other information about, their proposed amended pleading.  (ECF No. 49).  On November 18, 2021, the Original Plaintiffs filed a motion to amend (the "MTA") with a copy of the proposed Amended Complaint.

(ECF Nos. 50, 51; <u>see also</u> ECF Nos. 55, 57).[8]  Plaintiffs argued that the proposed amendment "rectifie[d] the alleged deficiencies in the" Complaint, (ECF No. 55 at 2), by adding, <u>inter alia</u>, allegations that Nemirofsky repeatedly assured Cherotti that he would "promptly pay back all of the loaned funds."  (ECF No. 51 ¶ 22).  The Original Plaintiffs also sought to remove Rosebud as a Plaintiff "because all of the funds that were wired came from Cherotti, not Rosebud." (ECF No. 55 at 2–3).  The Original Plaintiffs also sought to withdraw their claims for breach of fiduciary duty and negligent misrepresentation, and to add claims for fraud (the "Fraud Claim") and civil conspiracy (the "Conspiracy Claim") under New York law.  (ECF No. 51 ¶¶ 37–70; <u>see</u> ECF No. 55 at 2).  On December 2, 2021, Defendants opposed the MTA.  (ECF No. 52).

On February 23, 2022, AK moved to withdraw as Defendants' counsel based on Defendants' failure to pay their legal fees.  (ECF No. 65 (the "Withdrawal Motion")).  According to AK, "[a]part from the initial advance deposit and a $10,000 payment, and despite repeated requests, the Defendants ha[d] not paid any subsequent invoices—despite numerous promises by Nemirofsky to do so[,]" leaving an unpaid balance of $567,637.22 as of January 31, 2022. (ECF No. 67 ¶ 6–7).  AK argued, <u>inter alia</u>, that granting the Withdrawal Motion would not prejudice Defendants because it was made "before any discovery ha[d] occurred[.]" (ECF No. 66 at 5).  On February 24, 2022, the Court directed Defendants to respond to the Withdrawal Motion by March 10, 2022.  (ECF No. 68 (the "Feb. 24 Order")).  The Court advised Defendants that corporations cannot proceed <u>pro se</u> in federal court, and that, if the Withdrawal Motion were granted, Exphand's failure to retain new counsel could lead to entry of a certificate

---

[8] The MTA failed to include a memorandum of law or the exhibits referenced in the proposed Amended Complaint.  (<u>See</u> ECF Nos. 50, 51).  On December 9, 2021, at the Court's direction (ECF No. 56), the Original Plaintiffs filed a memorandum of law (ECF No. 55) and the exhibits. (ECF Nos. 57 – 57-5).

of default and a default judgment.  (Id. at 2). The Court adjourned the discovery deadline sine die, pending resolution of the Withdrawal Motion.  (Id.)  On February 25, 2022, counsel served the Withdrawal Motion and the Feb. 24 Order on Defendants.  (ECF No. 71).

On March 21, 2022, having received no response from Defendants, the Court granted the Withdrawal Motion.  (ECF No. 72 at 1).  The Court reiterated its warning to Exphand and directed new counsel to file a notice of appearance by April 4, 2022.  (Id.).  The discovery deadline remained adjourned sine die, pending the appearance of Defendants' new counsel.  (Id.)  On April 7, 2022, no new counsel having appeared, the Clerk of Court entered a certificate of Default against Exphand.  (ECF No. 80 (the "First Certificate")).

On April 28, 2022, the Original Plaintiffs filed a letter-motion for a discovery conference regarding their request to compel Nemirofsky to sit for a deposition. (ECF No. 81 (the "April 28 Motion")).  On April 29, 2022, the Court directed Nemirofsky to respond to the April 28 Motion by May 6, 2022.  (ECF No. 82).  On May 10, 2022, after Nemirofsky failed to respond to the April 28 Motion, the Original Plaintiffs moved for entry of a certificate of default and a finding of contempt against Nemirofsky. (ECF No. 83 (the "Contempt Motion")).  On May 13, 2022, attorney George M. Gavalas ("Gavalas") filed a notice of appearance on behalf of Defendants. (ECF No. 85).

On June 10, 2022, the Court (i) granted in part and denied in part the MTA,[9] (ii) directed Cherotti to file the Amended Complaint by June 17, 2022, (iii) directed Defendants to respond to the Amended Complaint by July 1, 2022; (iv) denied the MTD as moot, (v) vacated the First

---

[9] The Court denied as futile the Original Plaintiffs request to add Nemirofsky's wife as a defendant and to add the Conspiracy Claim, but otherwise granted the MTA, including the request to remove Rosebud as a Plaintiff and to add the Fraud Claim.  (ECF No. 86 at 17).

Certificate, (vi) scheduled a discovery conference for July 19, 2022, (vii) directed the parties to file a proposed case management plan by July 15, 2022, and (viii) denied the Contempt Motion without prejudice.  (ECF No. 86 (the "June 10 Order")).  On June 17, 2022, Cherotti filed the Amended Complaint, which includes the following claims: (i) the Breach of Contract Claim; (ii) the Unjust Enrichment Claim; (iii) the Conversion Claim; (iv) the Fraud Claim; and (v) the Fraudulent Conveyance Claim.  (ECF No. 89 ¶¶ 39–70).  The Amended Complaint also continues to request entry of an equitable lien or constructive trust, although Cherotti no longer asserts these requests as standalone causes of action.  (Id. at 14).

On July 18, 2022, after Defendants failed to respond to the Amended Complaint pursuant to the June 10 Order or otherwise communicate with the Court, the Court directed Plaintiffs to initiate default proceedings against Defendants by July 22, 2022.  (ECF No. 90).  On July 21, 2022 and July 22, 2022, Cherotti filed deficient requests for entry of certificates of default. (ECF Nos. 91; 93).  On July 27, 2022, the Court directed Cherotti to cure the deficiencies by July 29, 2022.  (ECF No. 94).  That same day, Defendants filed an answer to the Amended Complaint.  (ECF No. 95 (the "First Answer")).  Two days later, on July 29, 2022, Cherotti requested a certificate of default (ECF Nos. 96; 97), which the Clerk of Court entered that same day. (ECF No. 98 (the "Second Certificate)).

On July 30, 2022, Cherotti requested leave to file a motion to strike the First Answer and for other unspecified sanctions, stating that (i) the First Answer "was nearly one month late" and filed without leave; (ii) Defendants asserted 42 affirmative defenses, some of which "do not relate to the issues in this case[;]" and (iii) Defendants have "no good faith defenses in this action." (ECF No. 99 at 1–2 (the "Strike Request")).

On August 2, 2022, the Court found "that striking the [First] Answer or entering default judgment against Defendants [was] not appropriate at [that] time." (ECF No. 102 at 2 (the "Aug. 2 Order")).  Recognizing "the preference in this judicial circuit . . . that cases be resolved on the merits rather than on the basis of a party's default in fulfilling its litigation obligations or because of some technical or procedural reasons[,]" (id. (quoting Shim-Larkin v. City of New York, No. 16 Civ. 6099 (AJN) (KNF), 2018 WL 3187327, at *13 (S.D.N.Y. June 28, 2018)), the Court found that, "[a]lthough Defendants failed to file the [First] Answer within the court-ordered deadline, nothing in [the Strike] Request suggest[ed] that Defendants' conduct was willful or that lesser sanctions would not be effective at [that] time."  (Id.)  Accordingly, the Court (i) accepted the First Answer, (ii) vacated the Second Certificate, (iii) denied the Strike Request as moot and without prejudice to Cherotti's right to seek leave, at the appropriate time and with a proper showing, to move to strike specific affirmative defenses, and (iv) scheduled a status conference for September 20, 2022.  (Id. at 3).  The Court warned Defendants "that their failure to comply with the Court's orders or otherwise defend this action may leave to sanctions, including those permitted by Rule 37(c)(2)(A)(ii)–(vii)."  (Id. (original emphasis) (citing Rahman v. Red Chili Indian Cafe, Inc., No. 17 Civ. 5156 (RA) (BCM), 2020 WL 8733951, at *8 (S.D.N.Y. Nov. 24, 2020), adopted by, 2021 WL 423447 (S.D.N.Y. Feb. 8, 2021)).

On September 20, 2022, the Court held a status conference, at which Gavalas appeared on behalf of Defendants, acknowledged that several defenses in the First Answer were improperly asserted, and agreed to file an amended answer.  (ECF min. entry Sept. 20, 2022).  The Court directed Defendants to file an amended by September 26, 2022, and extended the deadline for completion of all discovery to October 28, 2022.  (ECF No. 103 (the "Sept. 20

Order")).  On September 27, 2022, after Defendants failed to file an amended answer, Cherotti requested leave " to file a complaint [sic] for contempt against the defendants and a motion for entry of default" and an award of attorneys' fees, based on Defendants failure to file their amended answer. (ECF No. 104 at 1 (the "Sept. 27 Request")).  On September 28, 2022, the Court denied the Sept. 27 Request for largely the same reasons set forth in the Aug. 2 Order, and, "[a]s a one-time courtesy, . . . sua sponte extend[ed] Defendants' deadline to file their amended answer" to September 30, 2022.  (ECF No. 105 at 2 (the "Sept. 28 Order")).  The Court again warned Defendants "that their failure to comply with [the Court's] Order may result in sanctions, including an order striking the [d]efenses" asserted in the First Answer.  (Id. (emphasis original) (citing Fed. R. Civ. P. 16(f), 37(b); Rahman, 2020 WL 8733951, at *8)).  On September 30, 2022, Defendants filed a second answer.  (ECF No. 106 (the "Second Answer")).

On October 19, 2022, Cherotti requested "permission to file a motion for default of the defendants, for summary judgment, and for discovery abuse sanctions against [D]efendants and their counsel." (ECF No. 107 (the "Oct. 19 Request")).  In support of the Oct. 19 Request, Cherotti stated that:

> Attorney Gavalas informed [Plaut] that [Gavalas] would take Cherotti's deposition on October 17, 2022 and would make Mr. Nemirofsky available for deposition on October 19, 2022. Accordingly, Cherotti was ready for his deposition on October 17, 2022, but Attorney Gavalas failed to get a stenographer, he failed to send Zoom login information and failed to take the deposition.
>
> . . .
>
> Well in advance (on September 27, 2022), Cherotti duly sent a deposition notice to Attorney Gavalas for Mr. Nemirofsky, for the very date that Attorney Gavalas selected as convenient, which was October 19, 2022. [On October 19, 2022], [Plaut] and the stenographer sat idly in the Zoom awaiting Mr. Nemirofsky and Attorney Gavalas, but neither appeared. [Plaut] made two telephone calls to Attorney Gavalas, and sent two emails, but they still did not appear.

(Id. (citations omitted).  On October 20, 2022, the Court directed Defendants to respond to the Oct. 19 Request by October 24, 2022, and warned Defendants "that failure to respond will result in an order granting the [Oct. 19] Request as unopposed."  (ECF No. 108).  On October 25, 2022, after Defendants failed to respond, the Court granted in part and denied in part the Oct. 19 Request and granted Cherotti leave to file a motion for default judgment by November 9, 2022. (ECF No. 109).

On October 31, 2022, at Cherotti's request, the Clerk of Court entered a certificate of default against Defendants.  (ECF No. 114 (the "Third Certificate")).  On November 4, 2022, Cherotti filed the Motion, which he served on all Defendants.  (ECF No. 115 at 8).  In the Motion, Cherotti seeks a judgment against Defendants on all counts, awarding him (i) $1,352,237.00 in compensatory damages, plus statutory interest, (ii) $1,352,237.00 in punitive damages, (iii) attorneys' fees and costs, and (iv) "an equitable lien and a constructive trust against all assets of both [D]efendants, wherever located, running in favor of Cherotti, in order to prevent further unjust enrichment and to provide Cherotti a meaningful opportunity to collect on [the] judgment."  (ECF No. 115-1).

On December 23, 2022, Cherotti filed a "supplement" to the Motion, which was an affidavit "in which Cherotti avers to his incurring $160,666 in legal fees and expenses in conjunction with this action."  (ECF No. 118; see ECF No. 18-1 (the "Cherotti Affidavit")).  Cherotti stated that he (i) paid $64,966.00 to Wagoner, (ii) paid $20,000.00 to an attorney named Damian Capozzola ("Capozzola"), (iii) paid $50,000.00 to CRP, (iv) owed an additional $25,000.00 to CRP, and (v) "incurred over $700 in expenses including the filing fees, the sheriff's service fees, deposition stenographer fees, and sundry postage and Fed Ex charges."  (ECF No. 118-1).

On December 27, 2022, noting that "[t]he [Cherotti] Affidavit does not . . . include any contemporaneous records to support the requested award of attorneys' fees[,]" the Court directed Cherotti to file by January 27, 2023 "a declaration of his counsel [] attaching contemporaneous billing records, specifying for each attorney, the date, the hours expended, and the nature of the work done" and, "[t]o the extent that he also seeks costs incurred in this action, . . . contemporaneous receipts, not merely entries in counsel's billing records, in support." (ECF No. 119).

On January 27, 2023, Plaut filed an affidavit in support of Cherotti's request for attorneys' fees and costs in the amount of $157,738.00, which is less than that stated in the Cherotti Affidavit.  (ECF No. 120 (the "Plaut Affidavit")).[10]  The Plaut Affidavit includes CRP's billing records. (Id. at 4–13).  It does not, however, include billing records from Wagoner or Capozzola, who, according to Plaut, represented Cherotti "in attempting to get his loan from the defendants repaid as part of pre-litigation[.]"  (Id. at 3 ¶ 10).

To date, Defendants have not responded to the Motion, and have not otherwise communicated with the Court since filing the Second Answer on September 30, 2022, eleven months ago.

### III. LEGAL STANDARDS

#### A.  Sanctions Under Federal Rules of Civil Procedure 16(f) and 37(b)

Federal Rule of Civil Procedure 16 authorizes the Court to "issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii)," where a party or its attorney has "fail[ed] to appear

---

[10] Plaut does not explain the discrepancy between the amounts of attorneys' fees and costs requested in the Cherotti and Plaut Affidavits.

at a scheduling or other pretrial conference" or has "fail[ed] to obey a scheduling or other pretrial

order."  Fed. R. Civ. P. 16(f).  Federal Rule of Civil Procedure 37, in turn, permits the Court to

impose a variety of sanctions—including "striking pleadings in whole or in part" and "rendering

a default judgment against [a] disobedient party"—where a party has "fail[ed] to obey an order

to provide or permit discovery."  Fed. R. Civ. P. 37(b)(2)(A)(ii)–(vii).

"When considering whether to impose sanctions under Rules 16 and 37, courts look to

several factors, including '(1) the willfulness of the non-compliant party or the reason for

noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of

noncompliance; and (4) whether the non-compliant party had been warned of the consequences

of . . . noncompliance.'"  Rahman, 2020 WL 8733951, at *6 (quoting Sanchez v. Jyp Foods Inc.,

2018 WL 4502008, at *3 (S.D.N.Y. Sept. 20, 2018)); see Agiwal v. Mid Island Mortg. Corp., 555

F.3d 298, 302 (2d Cir. 2009) (discussing same factors).  "Because the text of the [R]ule[s] requires

only that the district court's orders be 'just,' however, and because the district court has 'wide

discretion in imposing sanctions under [the Rules]," Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490

F.3d 130, 135 (2d Cir. 2007), these factors are not exclusive, and they need not each be resolved

against the [non-compliant] party" for the Court to impose sanctions.  S. New Eng. Tel. Co. v.

Glob. NAPs Inc., 624 F.3d 123, 144 (2d Cir. 2010) (citing Daval Steel Prods. v. M/V Fakredine, 951

F.2d 1357, 1366 (2d Cir.1991)).

The Second Circuit has "described default judgments as 'the most severe sanction which

the court may apply.'"  Marfia v. T.C. Ziraat Bankasi, 100 F.3d 243, 249 (2d Cir. 1996) (quoting

S.E.C. v. Mgmt. Dynamics, Inc., 515 F.2d 801, 814 (2d Cir.1975)).  "The Second Circuit has [also]

acknowledged, however, that dismissal or default may be an appropriate remedy where 'there

is a showing of willfulness, bad faith, or fault.'"  Walpert, 127 F. Supp. 3d at 123 (quoting West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir.1999)).  "Cases in which courts have struck pleadings, or entered judgment against a party, have generally involved intentional misconduct that has materially and negatively affected the resolution of an action."  Id. (collecting cases); see Rahman, 2020 WL 8733951, at *8 (S.D.N.Y. Nov. 24, 2020) (recommending that the defendants' answer be stricken and that the plaintiff be permitted to move for default judgment where the Court found that, "through their dilatory conduct, discovery failures, and frank disregard of this Court's orders, [the defendants] ha[d] forfeited the right to litigate [their] defenses"); see also Sieck v. Russo, 869 F.2d 131, 134 (2d Cir. 1989) (affirming entry of default judgment where defendants failed to appear for court-ordered deposition).

### B.  Default Judgment under Federal Rule of Civil Procedure 55

Where the Court determines that a defendant's conduct warrants default judgment pursuant to Rules 16 or 37, "the Court must [then] follow the procedure for entry of a default judgment as set forth in [Federal Rule of Civil Procedure 55]."  Coach, Inc. v. O'Brien, No. 10 Civ. 6071 (JPO) (JLC), 2011 WL 6122265, at *5 (S.D.N.Y. Nov. 28, 2011), adopted as modified on other grounds, 2012 WL 1255276 (S.D.N.Y. Apr. 13, 2012).  "This is because, unless a party's pleading states a claim and contains sufficient allegations to support the entry of a default judgment in the Rule 55 context, awarding a default judgment as a sanction would be excessive and would violate the basic rule of proportionate sanctioning."  JCDecaux Airport, Inc. v. Tom Sawyer Prods., Inc., No. 16 Civ. 5067 (NRB), 2020 WL 635580, at *5 (S.D.N.Y. Feb. 11, 2020).

A party seeking a default judgment must follow the two-step procedure set forth in Rule 55.  See Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC, 779 F.3d

182, 186–87 (2d Cir. 2015).  First, under Rule 55(a), where a party has failed to plead or otherwise defend in an action, the Clerk of the Court must enter a certificate of default.  See Fed. R. Civ. P. 55(a).  Second, after entry of the default, if the party still fails to appear or move to set aside the default, the Court may enter a default judgment.  See Fed. R. Civ. P. 55(b).  Whether to enter a default judgment lies in the "sound discretion" of the trial court.  Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993).  Because a default judgment is an "extreme sanction" that courts are to use as a tool of last resort, Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981), the district court must "carefully balance the concern of expeditiously adjudicating cases, on the one hand, against the responsibility of giving litigants a chance to be heard, on the other."  Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 29 (E.D.N.Y. Mar. 19, 2015) (citing Enron, 10 F.3d at 96).

In considering whether to enter a default judgment, district courts are "guided by the same factors [that] apply to a motion to set aside entry of a default."  First Mercury Ins. Co. v. Schnabel Roofing of Long Is., Inc., No. 10 Civ. 4398 (JS) (AKT), 2011 WL 883757, at *1 (E.D.N.Y. Mar. 11, 2011).  "These factors include: (1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether the defaulting party has presented a meritorious defense."  J & J Sports Prods. Inc. v. 1400 Forest Ave. Rest. Corp., No. 13 Civ. 4299 (FB) (VMS), 2014 WL 4467774, at *4 (E.D.N.Y. Sept. 10, 2014) (citing Swarna v. Al-awadi, 622 F.3d 123, 142 (2d Cir. 2010)); see Enron, 10 F.3d at 96 (noting that "[a]lthough the factors examined in deciding whether to set aside a default or a default judgment are the same, courts apply the factors more rigorously in the case of a default judgment because the concepts of finality and litigation repose are more deeply implicated in the latter action").

# IV. DISCUSSION

## A. Dispositive Sanctions are Appropriate.

Having considered Defendants' willful failure to participate in this action despite the Court's warnings, the efficacy of lesser sanctions, and the duration of Defendants' non-compliance, the Court finds that striking the Second Answer and entering default judgment against Defendants is appropriate.

First, the Court finds that Defendants' noncompliance with this Court's orders has been willful.  Over a period of nearly a year, Defendants have engaged in a variety of misconduct that appears to be calculated to delay a resolution of this action.  This misconduct began with Defendants failing to pay AK's fees, leading to the Withdrawal Motion.  (ECF Nos. 65–67).  Defendants then failed to respond to the Withdrawal Motion, which the Court granted, and failed to retain new counsel by the Court-ordered deadline despite the Court's warnings, resulting in the entry of the First Certificate on April 7, 2022.  (ECF Nos. 72; 80).  See Walpert, 127 F. Supp. 3d at 124 (in assessing defendants' willfulness, considering their failure to pay attorneys' fees causing counsel's withdrawal).

Although Defendants ultimately retained new counsel on May 13, 2022, (ECF No. 85), their delays continued.  They failed to respond to the Amended Complaint by the Court-ordered deadline, causing the Court to cancel a telephone conference and permit Cherotti to seek default judgment.  (ECF No. 90).  Although they subsequently filed the First Answer (which Gavalas had to amend due to its inclusion of irrelevant affirmative defenses), Defendants then failed to comply with the discovery schedule set forth in the Court's Sept. 20 Order.  (ECF Nos. 95; 103; 105; 106).  Without explanation, Defendants failed to take Cherotti's deposition, and Nemirofsky

failed to appear for his deposition, despite Defendants' counsel selecting the dates for each deposition. (ECF No. 107). Defendants also failed to comply with the Court's directive to respond to Cherotti's Oct. 19 Request. (ECF Nos. 107; 108). Indeed, since they filed their Second Answer on September 30, 2022—nearly a year ago—Defendants have not communicated with the Court at all, despite Court orders to do so. (See ECF No. 103 ¶ 3 (directing parties to submit joint status letter to Court by November 3, 2022); see also ECF No. 108 (directing Defendants to respond to the Oct. 19 Request by October 24, 2022)).

Given the prior warnings to Defendants regarding their failure to comply with this Court's Orders, (see ECF Nos. 68; 72; 102; 105), "[s]uch conduct is reflective of willfulness and warrants harsh sanctions." Sanchez v. Jyp Foods Inc., No. 16 Civ. 4472 (JLC), 2018 WL 4502008, at *3 (S.D.N.Y. Sept. 20, 2018); see Rahman, 2020 WL 8733951, at *7 (in assessing willfulness, noting Defendants' "18-month silence" despite court orders to provide discovery); Pelgrift v. 355 W. 51st Tavern Inc., 2016 WL 817470, at *3 (S.D.N.Y. Feb. 23, 2016) (considering defendants' failure to provide any "explanation for their repeated failures to respond to Plaintiffs' discovery requests in a timely fashion" and their failure to respond to court orders).

Second, the Court finds that lesser sanctions would not be effective. Given that Defendants have repeatedly failed to comply with Court orders despite warnings of the risk of sanctions, and have apparently stopped defending this matter altogether, more narrowly tailored sanctions, such as an order precluding Defendants from introducing or relying on undisclosed evidence, prohibiting defenses, or finding certain facts in favor of Cherotti (with or without monetary sanctions) would be "an exercise in futility." Sanchez, 2018 WL 4502008, at *4; see Koch v. Rodenstock, No. 06 Civ. 6586 (BSJ) (DF), 2010 WL 2010892, at *7

(S.D.N.Y. Apr. 23, 2010) ("[A]ny lesser sanction here would be an exercise in futility, given Defendant's deliberate refusal to cooperate in this litigation . . . ."), <u>adopted by</u>, 2010 WL 2010900 (S.D.N.Y. May 18, 2010); <u>Microsoft Corp. v. Comput. Care Ctr., Inc.</u>, No. 06 Civ. 1429 (SLT), 2008 WL 9359718, at *4–5 (E.D.N.Y. Apr. 8, 2008) (striking defendants' answer where "[l]ess harsh sanctions, such as orders compelling defendants to participate, ha[d] already proven fruitless"), <u>adopted by</u>, 2008 WL 4179653 (E.D.N.Y. Sept. 10, 2008).

Third, the duration of Defendants' noncompliance weighs in favor of entering default judgment.  As discussed above, Defendants' misconduct began no later than February 23, 2022, when AK filed the Withdrawal Motion due to Defendants' failure to pay its bills.  (ECF Nos. 65–67).  Even after they retained new counsel on May 13, 2022 (over a month after the Court-ordered deadline to do so), "[D]efendants have only intermittently participated in this litigation[,]" appearing at one conference and "inconsistently responding, in part, to some but not all of this Court's discovery orders."  <u>Rahman</u>, 2020 WL 8733951, at *8; <u>see</u> <u>Loc. Union No. 40 of the Int'l Ass'n of Bridge v. Car-Wi Const.</u>, 88 F. Supp. 3d 250, 265 (S.D.N.Y. 2015) (noting that "durations of time as brief as a few months have been held to weigh in favor of dispositive sanctions . . . [a]nd periods of six months or more weigh even more heavily toward [dispositive sanctions].").

Finally, the Court has repeatedly warned Defendants that they risked dispositive sanctions if they failed to comply with Court orders.  In the Aug. 2 Order, the Court warned Defendants "<u>that their failure to comply with the Court's orders or otherwise defend this action</u> <u>may leave to sanctions, including those permitted by Rule 37(c)(2)(A)(ii)–(vii)</u>."  (ECF No. 102 at 3 (emphasis original)).  In the Sept. 28 Order, the Court warned Defendants "<u>that their failure to</u>

comply with [the Court's] Order may result in sanctions, including an order striking the [d]efenses" asserted in the First Answer.  (Id. (original emphasis) (citing Fed. R. Civ. P. 16(f), 37(b); Rahman, 2020 WL 8733951, at *8)).  Despite these warnings, Defendants have failed to comply with the discovery schedule set forth in the Court's Sept. 20 Order (ECF No. 103), failed to provide required discovery, failed to respond to Cherotti's request to file the Motion or the Motion itself, and have ceased defending this case altogether.  See Walpert, 127 F. Supp. 3d at 127 (entering default judgment after warning to Defendants).

Accordingly, in light of Defendants' willful disregard of the Court's scheduling orders and their discovery obligations, the Court finds that dispositive sanctions under Rules 16 and 37, including striking the Second Answer and entry of default judgment, are appropriate. See Murphy v. Snyder, No. Civ. 101513 (JS) (AKT), 2014 WL 12988632, at *7 (E.D.N.Y. Aug. 15, 2014) (recommending that the defendants answer be stricken and default judgment be entered under Rule 37), adopted by, 2014 WL 4700213 (E.D.N.Y. Sept. 22, 2014).

**B.  Cherotti is Entitled to Default Judgment as to the Breach of Contract Claim.**

Having determined that Defendants' "noncompliance with Court orders justifies entry of a default judgment under Rule 16(f), "the Court must 'follow the procedure for entry of a default judgment as set forth in [Rule 55]'" as set forth above.   DISH Network L.L.C. v. Kaczmarek, No. 19 Civ. 4803 (EK) (SJB), 2021 WL 4483470, at *10 (E.D.N.Y. June 24, 2021), adopted as modified on other grounds by, 2021 WL 4485870 (E.D.N.Y. Sept. 30, 2021); see Walpert, 127 F. Supp. 3d at 129.  In accordance with the two-step process in Rule 55, the Clerk of the Court entered the Third Certificate. (ECF No. 114).  Furthermore, as discussed above, the Court finds that Defendants' misconduct was willful, and that entry of default judgment is therefore proper

in this case.  The Court has also considered the defenses Defendants raised in Second Answer, and finds none to be meritorious.  Accordingly, the Court assesses whether Cherotti's allegations in the Amended Complaint, accepted as true, are sufficient to establish Defendants' liability.

    1.  **Jurisdiction and venue**

As a threshold matter, the Court has subject-matter jurisdiction over this action.  Cherotti is a New York citizen, and Nemirofsky and Exphand are citizens of California and Delaware, respectively.  (ECF No. 89 ¶¶ 1–3).  The parties are thus citizens of different states.  Cherotti seeks damages of at least $1,352,237.31 (see ECF No. 89 ¶ 21), which is above the $75,000 threshold required by 28 U.S.C. § 1332.  Therefore, the Court has diversity jurisdiction over this matter.  See Bleecker v. Zetian Sys., Inc., No. 12 Civ. 2151 (DLC), 2013 WL 5951162, at *4 (S.D.N.Y. Nov. 1, 2013).

With respect to the Court's personal jurisdiction over Defendants and the propriety of venue, Defendants have waived any challenge to these issues "by filing an answer which did not set forth these defenses[.]"  Motown Rec. Co., L.P. v. Motown Beverage Co. of Ohio, 165 F.3d 14 (2d Cir. 1998) (in affirming entry of default judgment for failure to comply with discovery requests, noting that "waiver of a challenge to personal jurisdiction may occur due to a party's conduct, as well as its failure to raise the defense in motions or pleadings").  (See ECF Nos. 42; 43; 95; 106).  In any event, the Court has personal jurisdiction over Defendants, and venue is proper, because "both [D]efendants are actively doing business in New York, and/or receiving funds directly and indirectly from persons and entities in New York[,]" (ECF No. 89 ¶ 4), and Cherotti properly served each Defendant.  (ECF Nos. 10–11; 89).  See 28 U.S.C. §§ 1391(b)(1)–(2).

2. __Liability__

a. __Breach of Contract Claim__[11]

To state a claim for breach of contract under New York law, a plaintiff must allege four elements: "(1) the existence of a contract; (2) the performance of that contract by one party; (3) the breach of that contract by the other party; and (4) damages." LG Cap. Funding, LLC v. Energy Edge Techs. Corp., No. 17 Civ. 9021 (AKH), 2018 WL 4278344, at *1 (S.D.N.Y. Aug. 28, 2018); accord Lenard v. Design Studio, 889 F. Supp. 2d 518, 528 (S.D.N.Y. 2012). The Court finds that Cherotti has adequately alleged each of these four elements: (i) Cherotti agreed to loan Defendants a total of $1,352,237.31 in exchange for Defendants' promise "that he would be promptly paid back for the principal of the loan, plus he would receive Exphand stock as interest," (ii) Cherotti performed under the parties' agreements by loaning Defendants $1,352,237.31, (iii) Defendants breached the agreements by failing to repay the Loans; and (iv) Cherotti has been damaged in the amount of $1,352,237.31. (ECF No. 89 ¶¶ 22–27). See LG Cap., 2018 WL 4278344, at *1 (finding that plaintiff had adequately pled breach of contract claim); Shim v.

---

[11] Cherotti does not address the issue of which state's law applies to his Breach of Contract Claim, and instead assumes that New York law applies to each of his claims. (ECF Nos. 89; 115). The Court notes, however, that applying the law of the only other states with any nexus to this case, i.e., Delaware (where Exphand is incorporated) or California (where Nemirofsky is a citizen) would not lead to a different result. See Res. Mine, Inc. v. Gravity Microsystem LLC, No. 09 Civ. 573 (LDH) (SIL), 2018 WL 11510914, at *4 n.5 (E.D.N.Y. Oct. 2, 2018) ("[T]here is no conflict between New York and Delaware law with respect to [] breach of contract claims."); Labajo v. Best Buy Stores, L.P., 478 F. Supp. 2d 523, 528 (S.D.N.Y. 2007) ("There is . . . no real conflict between the laws of California and New York for breach of contract[.]"). "Where there is no significant difference between the laws of the [] states in question, the Court need not reach the choice of law issue." Am. Cas. Co. of Reading, Pa. v. Morgan-White Underwriters, Inc., No. 02 Civ. 931 (WHP) (DF), 2003 WL 23374768, at *6 n.4 (S.D.N.Y. Sept. 30, 2003). Moreover, "[w]hen neither party raises the issue of choice of law, it can be said that they have consented to the application of the forum state's law." Chung v. Sano, No. 10 Civ. 2301 (DLI), 2011 WL 1303292, at *7 (E.D.N.Y. Feb. 25, 2011) (applying New York law despite potential applicability of New Jersey law where plaintiff had "not taken any position" on choice of law and defendant had defaulted). Accordingly, the Court applies New York law.

<u>Millennium Grp.</u>, No. 08 Civ. 4022 (FB) (VVP), 2009 WL 211367, at *4 (E.D.N.Y. Jan. 28, 2009) (finding that plaintiffs had adequately pled breach of oral contract); <u>Maas v. Cornell Univ.</u>, 94 N.Y.2d 87, 92 (1999) (recognizing that "a promise may be stated in words either oral or written, or may be inferred wholly or partly from conduct."); <u>cf.</u> <u>Almazan v. Almazan</u>, No. 14 Civ. 311 (AJN), 2015 WL 500176, at *8 (S.D.N.Y. Feb. 4, 2015) ("New York courts have generally held that an oral loan, even without a determinate or specified maturity date, does not fall within the Statute of Frauds because the debtor <u>could</u> repay the loan within a year."). Defendants are therefore liable for breach of contract.[12]

### b.  <u>Unjust Enrichment and Conversion Claims</u>

To state a claim for unjust enrichment, a plaintiff must plead: "'(1) that defendant was enriched; (2) that the enrichment was at plaintiff's expense; and (3) it is against equity and good conscience to permit defendant to retain what is sought to be recovered.'" <u>Bos. Sci. Corp. v. N.Y. Ctr. for Specialty Surgery</u>, No. 14 Civ. 6170 (RRM) (SMG), 2015 WL 13227994, at *3 (E.D.N.Y. Aug. 31, 2015) (quoting <u>Fed. Ins. Co. v. CAC of NY, Inc.</u>, No. 14 Civ. 4132 (DRH) (SIL), 2015 WL 1198603, at *4 (E.D.N.Y. Feb. 5, 2015)). An unjust enrichment claim is not predicated on an agreement between the parties; "'instead, it is a non-contractual, equitable remedy that is inapplicable if there is an enforceable contract governing the subject matter.'" <u>Id.</u> (quoting <u>Profi-</u>

---

[12] "Because each of the Defendants acted in concert to produce a single injury, they [are] held jointly and severally liable for any damages awarded to" Cherotti on his Breach of Contract Claim.  <u>Living the Dream Films, Inc. v. Aloris Ent., LLC</u>, No. 20 Civ. 6982 (LGS) (JLC), 2021 WL 4342700, at *11 n.6 (S.D.N.Y. Sept. 24, 2021), (recommending joint and several liability against individual and corporate defendants on breach of contract claim), <u>adopted by</u>, 2021 WL 5822233 (S.D.N.Y. Dec. 7, 2021); <u>see</u> <u>Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf</u>, 241 F.R.D. 451, 457 (S.D.N.Y. 2007) (entering judgment against corporate defendant and individual defendant jointly and severally on breach of contract claim).

Parkiet Sp. Zoo v. Seneca Hardwoods LLC, No. 13 Civ. 4358 (PKC) (LB), 2014 WL 2169769, at *5 (E.D.N.Y. May 23, 2014)).

"Under New York law, conversion is 'the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" City of Almaty v. Ablyazov, 278 F. Supp. 3d 776, 801 (S.D.N.Y. 2017) (quoting Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 403–04 (2d Cir. 2006)). "[C]onversion claims are routinely dismissed . . . where duplicative of breach of contract claims." Transcience Corp. v. Big Time Toys, LLC, 50 F. Supp. 3d 441, 456 (S.D.N.Y. 2014) (collecting cases).

Here, Cherotti's Unjust Enrichment and Conversion Claims are duplicative of his Breach of Contract Claim. For example, he bases the Breach of Contract Claim on the allegation that Defendants "materially and without justification breached their contracts with Cherotti . . . by failing to repay the amounts that were loaned, by failing to issue Exphand stock to Cherotti in lieu of interest on those [L]oans, and by failing to pay on the [] Notes[,]" (ECF No. 89 ¶ 41) and the Unjust Enrichment Claim on the similar allegation that Defendants "have been unjustly enriched by their conduct at the expense of Cherotti . . . by receiving [L]oans from him upon promises of repayment, but then by not repaying those [L]oans and instead using them for improper purposes[.]" (Id. ¶ 46). The same is true of the Conversion Claim, which he bases on the allegation that "Cherotti has a lawful right to the monies he lent to the [D]efendants" and that Defendants "failed to return said funds and have exercised unlawful dominion over same[.]") (Id. ¶ 49). Given Cherotti's ability to recover on his well-pled Breach of Contract Claim, (see § IV.B.2.a, supra), he is not entitled to recover any damages on his duplicative Unjust Enrichment or Conversion Claims. See Serrano v. Palacios, No. 21 Civ. 980 (CBA) (TAM), 2022 WL

2134293, at *8 (E.D.N.Y. May 20, 2022), adopted by, 2022 WL 2132951 (E.D.N.Y. June 14, 2022);

accord Maxalbumus Inc. v. Direct Movers LLC, No. 18 Civ. 3450 (JMA) (ARL), 2020 WL 8617499,

at *4 n.4 (E.D.N.Y. Dec. 4, 2020), adopted by, 2021 WL 681384 (E.D.N.Y. Feb. 22, 2021)).

Defendants are therefore not liable for unjust enrichment or conversion.

### c.  Fraud and Fraudulent Conveyance Claims[13]

"To prove fraud under New York law, 'a plaintiff must show that (1) the defendant made

a material false representation, (2) the defendant intended to defraud the plaintiff thereby,

(3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage

as a result of such reliance.'"  Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d

13, 19 (2d Cir. 1996).  In a diversity action such as this, state-law fraud claims must be pled with

particularity pursuant to Federal Rule of Civil Procedure 9(b).  See Premium Mortg. Corp. v.

Equifax, Inc., 583 F.3d 103, 108 (2d Cir. 2009); accord Murray Eng'g P.C. v. Remke, No. 17 Civ.

---

[13] Cherotti brings his Fraudulent Conveyance Claim under DCL § 276.  (See ECF Nos. 89 ¶ 66; 115 at 5; see also ECF No. 1 ¶¶ 94–95).  The Court notes "that on December 6, 2019, New York State enacted the 'Uniform Voidable Transactions Act,' which repealed and replaced certain provisions related to fraudulent conveyances (including NYDCL §§ 273, 275, and 276)."  Varbero v. Belesis, No. 20 Civ. 2538 (LJL), 2020 WL 5849516, at *5 (S.D.N.Y. Oct. 1, 2020); see 2019 N.Y. Laws, ch. 580, § 2.  Prior to the amendment, section 276 provided that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."  The amended provision, section 273(a)(1), now provides that "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay or defraud any creditor of the debtor."  The amendments do not apply to claims that accrued before April 4, 2020.  See 2019 N.Y. Law, ch. 580, § 7.  Here, Cherotti does not address the amendment or which version of the DCL applies to his Fraudulent Conveyance Claim.  Indeed, he fails even to specifically allege when his Fraudulent Conveyance Claim accrued, claiming that "only Nemirofsky knows the precise dates on which he engaged in such conveyances, but it was between March 7, 2018 and June 18, 2020[.]" (ECF No. 89 ¶ 68).  For purposes of the Motion, the Court assumes the amendments apply, but notes that, under either version, the Fraudulent Conveyance Claim fails as a matter of law for the reasons set forth below.

6267 (KPF), 2018 WL 3773991, at *3 (S.D.N.Y. Aug. 9, 2018).   Accordingly, such claims must

"(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker,

(3) state where and when the statements were made, and (4) explain why the statements were

fraudulent."  Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006).  Furthermore, such a

claim must also "allege facts that give rise to a strong inference of fraudulent intent."   Id.

A plaintiff may establish a "strong inference" of fraud by "alleging facts to show that defendants

had both motive and opportunity to commit fraud," or "by alleging facts that constitute strong

circumstantial evidence of conscious misbehavior or recklessness."  Lerner, 459 F.3d at 290–91.

With respect to the Fraudulent Conveyance Claim, New York law provides that:

> A transfer made or obligation incurred by a debtor is voidable as to a creditor,
> whether the creditor's claim arose before or after the transfer was made or the
> obligation was incurred, if the debtor made the transfer or incurred the obligation
> . . . with actual intent to hinder, delay or defraud any creditor of the debtor[.]

DCL § 273(a)(1).  "A party seeking to set aside a fraudulent conveyance under [the DCL] must

plead an actual intent to defraud with particularity sufficient to meet the heightened standard of

Rule 9(b)."  Royal Palm Senior Investors, LLC v. Carbon Capital II, Inc., No. 08 Civ. 4319, 2009 WL

1941862, at *6 (S.D.N.Y. July 7, 2009); accord Waite v. Schoenbach, No. 10 Civ. 3439 (RMB), 2010

WL 4456955, at *5 (S.D.N.Y. Oct. 29, 2010).

Cherotti's Fraud and Fraudulent Conveyance Claims fail as a matter of law.  As an initial

matter, like his Unjust Enrichment and Conversion Claims, Cherotti's Fraud Claim is duplicative

of his Breach of Contract Claim.  "[A] cause of action for fraud may be maintained where a plaintiff

pleads a breach of duty separate from, or in addition to, a breach of the contract."  Sotheby's,

Inc. v. Stone, 388 F. Supp. 3d 265, 275 (S.D.N.Y. 2019) (quoting First Bank of the Ams. v. Motor

Car Funding, Inc., 257 A.D.2d 287 (1st Dep't 1999)).  "But where 'the promise concerned the

performance of the contract itself, the fraud claim is subject to dismissal as duplicative of the claim for breach of contract.'" Id. (quoting Fairway Prime Estate Mgmt., LLC v. First Am. Int'l Bank, 99 A.D.3d 554 (1st Dep't 2012)).  Here, the allegedly false promises on which Cherotti bases his Fraud Claim "concern the performance of the contract itself[.]"  Id.  (See ECF No. 89 ¶ 55 (basing Fraud Claim on allegations that "Nemirofsky, both for his own benefit and as an agent and servant of Exphand, falsely represented to Cherotti that: (a) if he loaned them money (both by direct loans and by the payment of their expenses) they would pay him back; (b) the money would be used to help Exphand with short term expenses; (c) Exphand was a valuable company worth at least $200,000,000 and therefore there was no realistic way his loans would not be paid back; (d) if Cherotti purchased the Homic Notes he would be promptly paid on those notes; and (e) that they would provide him stock in lieu of interest on those loans").  Accordingly, the Fraud Claim is duplicative of the Breach of Contract Claim.  See Sotheby's, 388 F. Supp. 3d at 275 ("Because the Court determines that the fraud counterclaim is premised on the same agreement as the breach of contract counterclaim, it finds that the fraud counterclaim is duplicative of the breach of contract counterclaim."); see also Mariano v. CVI Invs. Inc., 809 F. App'x 23, 26 (2d Cir. 2020) (summary order) (affirming dismissal of fraud claim based on conduct that was consistent with contractual obligations); Bridgestone, 98 F.3d at 19 (finding fraud claim duplicative of breach of contract claim where the defendant's allegedly fraudulent "representations were intended to lull [the plaintiff] into a false sense of security and . . . amount[ed] to little more than intentionally-false statements by [the defendant] indicating his intent to perform under the contract")).

In any event, even drawing all reasonable inferences in his favor, Cherotti's allegations in the Amended Complaint and the Motion are too conclusory to support the Fraud and Fraudulent Conveyance Claims.    With respect to his Fraud Claim, Cherotti alleges that Nemirofsky "manipulate[ed] him, by falsely representing to him that the funds would be paid back, and by falsely representing to Cherotti he would remit stock in Exphand in lieu of interest on the loaned funds."   (ECF No. 89 ¶ 37; see id. ¶ 55).   Cherotti fails, however, to identify any specific statements, and states only in general terms when the statements were made.   (See id. ¶ 55 (alleging, inter alia, that, "on various dates between March 1, 2018 and June 18, 2020," Defendants falsely represented to Cherotti that "they would pay him back[,] . . . there was no realistic way his [L]oans would not be paid back[,] and [] that they would provide him stock in lieu of interest on those [L]oans"); ECF No. 115 at 3 (alleging that "Nemirofsky, both for his own benefit and as the owner and officer of Exphand, represented to Cherotti that if he loaned them money they would pay him back. These representations were made in New York and on various dates between March 1, 2018 and June 18, 2020.")).   Nor do Cherotti's allegations regarding Kaylan Riley's claims of theft against Nemirofsky bolster the Fraud Claim, because the Opinion reflects that Ms. Riley failed to show that "Nemirofsky made false representations" or "had an intent to defraud her." (ECF No. 89 at 147).   Taken as a whole, Cherotti's allegations in support of his Fraud Claim fail to satisfy Rule 9(b)'s heightened pleading requirement.   See Lerner, 459 F.3d at 290 (affirming dismissal of fraud claim for lack of particularity); Murray Eng'g P.C., 2018 WL 3773991, at *14 (dismissing fraud claim for lack of particularity).

Similarly, to support his Fraudulent Conveyance Claim, Cherotti alleges that "Nemirofsky conveyed assets of Exphand with the actual intent to hinder, delay and defraud Cherotti and his

ability to be paid back his debt.[,]" and that "only Nemirofsky knows the precise dates on which he engaged in such conveyances, but it was between March 7, 2018 and June 18, 2020[.]" (ECF No. 89 ¶ 68; see ECF No. 115 at 5).  These allegations, however, are entirely conclusory and merely parrot the language of the DCL, and are therefore insufficient to satisfy even Federal Rule of Civil Procedure 8(a)'s ordinary pleading standard, much less the applicable heightened pleading standard of Rule 9(b).  See Espire Ads LLC v. TAPP Influencers Corp., No. 21 Civ. 10623 (JGK), 2023 WL 1968025, at *24 (S.D.N.Y. Feb. 13, 2023) (dismissing fraudulent conveyance claim based on "only conclusory allegations essentially restating the terms of the statute"); Romano v. Triborough Energy Corp., No. 22 Civ. 463 (VEC), 2023 WL 35155, at *3 (S.D.N.Y. Jan. 3, 2023) ("Without basic details regarding what property was conveyed to whom, when, and why Plaintiff alleges the transfer was fraudulent, the Amended Complaint does not provide sufficient factual allegations to plausibly support an inference that the [] Defendants intentionally fraudulently conveyed property . . . .").

Accordingly, Defendants are therefore not liable for fraud or fraudulent conveyance.

## C.  Damages

Having determined Defendants' liability, the Court must determine whether Cherotti has provided sufficient evidence to support his claim for damages, and if so, the amount of damages to be awarded.  Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997); Bleecker, 2013 WL 5951162, at *6.  Annexed to the Amended Complaint and in support of the Motion, Cherotti provides bank statements reflecting the various payments he made to Defendants under their oral agreements.  (ECF No. 89 at 121–31; see ECF No. 75-1 (Cherotti attesting to accuracy of the bank statements)).  The Court finds

that Cherotti has met his evidentiary burden and that a hearing is unnecessary because his submissions constitute a "sufficient basis from which to evaluate the fairness of" its damages request without the need for a hearing.  Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989); see Bos. Sci., 2015 WL 13227994, at *3.  From this evidence, the Court will next analyze the appropriate amounts of compensatory damages and pre- and post-judgment interest, as well as Cherotti's requests for a constructive trust, equitable lien, punitive damages, attorneys' fees, and costs.

### 1.  Compensatory Damages

The general rule for measuring damages for breach of contract . . . is the amount necessary to put the plaintiff in the same economic position he would have been in had the [d]efendant fulfilled his contract."  Bos. Sci., 2015 WL 13227994, at *4.  Cherotti has alleged that Defendants failed to repay the Loans totaling $1,352,237.31, and has bank statements reflecting the payments he made to Defendants.  (ECF No. 89 ¶ 22; see id. at 121–31).  Accordingly, Cherotti is entitled to recover $1,352,237.31 in compensatory damages.  See Vorcom Internet Servs., Inc. v. L&H Eng'g & Design LLC, No. 12 Civ. 2049 VB, 2015 WL 1000750, at *4 (S.D.N.Y. Mar. 5, 2015) (awarding compensatory damages for beach contract in the amount reflected in bank statements showing payments).

### 2.  Equitable lien and constructive trust

"Cherotti seeks an equitable lien and that a constructive trust be imposed on the assets of both [D]efendants in the amount of the fraudulently converted funds plus interest, punitive damages and attorneys' fees, insofar as the [D]efendants' claims of insolvency would render a

legal remedy to be inadequate to make Cherotti whole, and such equitable relief is necessary to satisfy the demands of justice."  (ECF No. 115 at 7; see ECF No. 89 at 14).

"Under New York law, a court will impose an equitable lien where the facts surrounding a transaction evidence that the parties intended that a specific piece of property is to be held or transferred to secure an obligation." Genger v. Genger (In re Genger), No. 19-13895 (JLG), 2021 WL 3574034, at *23 (Bankr. S.D.N.Y. Aug. 12, 2021); see Ajax Integr., LLC v. DivLend Equip. Leasing, LLC (In re Ajax Integrated, LLC), No. 14-30435, 2016 WL 1178350, at *6 (Bankr. N.D.N.Y. Mar. 23, 2016) ("An equitable lien arises where there is strict proof of an intention to create a lien from the language of the controlling agreement and underlying circumstances and when a secured creditor is prevented from perfecting its interest by an uncooperative Debtor.").  "The intention to create an equitable lien must clearly appear from the language and attendant circumstances."  Genger, 2021 WL 3574.34, at * 23.

"Under New York law, to state a claim for the imposition of a constructive trust, a plaintiff 'must plead and prove four essential elements: (1) a confidential or fiduciary relationship, (2) a promise, (3) a transfer in reliance thereon, and (4) unjust enrichment.'" Cap. Distribs. Servs., Ltd. v. Ducor Exp. Airlines, Inc., 440 F. Supp. 2d 195, 209 (E.D.N.Y. 2006) (quoting Doxey v. Glen Cove Community Development Agency, 28 A.D.3d 511, 512 (2d Dep't 2006)).  "Where a valid agreement controls the rights and obligations of the parties, an adequate remedy at law typically exists, and a constructive trust should not be imposed."  Cereus Prod. Dev., Inc. v. Boom LLC, No. 14 Civ. 4292 (PAC), 2015 WL 3540827, at *9 (S.D.N.Y. June 5, 2015).

Here, Cherotti has failed to establish his entitlement to either an equitable lien or a constructive trust.  With respect to an equitable lien, Cherotti does not identify any agreement

between the parties providing that a specific piece of Defendants' property was to be held or transferred to secure the Loans.  See Genger, 2021 WL 3574034, at *23 (denying request for equitable lien where the requesting party "fail[ed] to allege the existence of an agreement that the [property] . . . was supposed to be held as security for [the opposing party]'s obligations") (citing Teichman by Teichman v. Cmty. Hosp. of W. Suffolk, 87 N.Y.2d 514, 521 (1996) (affirming denial of equitable lien where the contract at issue did "not identify property subject to the right of refund; [did] not describe the property in such a way as to make identification possible; and [did] not state the parties' intention that the property be held, given or transferred as security for [an] obligation")).  Similarly, the existence of valid contracts between the parties (see § IV.B.2.a supra) "precludes" Cherotti from requesting a constructive trust.  ScentSational Techs., LLC v. PepsiCo, Inc., No. 13 Civ. 8645 (KMK), 2017 WL 4403308, at *18 (S.D.N.Y. Oct. 2, 2017); see Shih v. Petal Card, Inc., No. 18 Civ. 5495 (JFK), 2020 WL 5659429, at *20 (S.D.N.Y. Sept. 23, 2020) (dismissing request for constructive trust where "monetary damages would be adequate"); Hanson v. Hanson, No. 18 Civ. 695 (KPF), 2019 WL 935127, at *11 (S.D.N.Y. Feb. 26, 2019) (holding that defendant could not "state a claim for a constructive trust remedy because [it had] counterclaimed for money damages and thus ha[d] an 'adequate remedy at law.'").  Accordingly, the Court denies Cherotti's requests for an equitable lien and constructive trust.

### 3.  Punitive damages

Cherotti seeks an award of punitive damages. (ECF Nos. 89 ¶ 62; 115 at 5–6).  "Under New York law, a claim for punitive damages must be supported by facts demonstrating 'high moral culpability' and punitive damages are generally not recoverable for private wrongs."  Centra Devs. Ltd. v. Jewish Press Inc., No. 16 Civ. 6737 (WFK) (LB), 2018 WL 1445574, at *4 (E.D.N.Y.

Mar. 23, 2018) (quoting RKB Enters. Inc. v. Ernst & Young, 182 A.D.2d 971, 973 (3d Dep't 1992)) (affirming dismissal of claim for punitive damages where plaintiff "ha[d] not alleged facts sufficient to demonstrate that defendants' conduct rose to the level of high moral culpability," and even assuming that defendants had acted "in a wanton, willful or malicious manner . . . these acts would constitute private wrongs for which punitive damages may not be recovered")).  "The circumstances in which New York law allows punitive damages are 'singularly rare.'"  Martiny v. Introcaso-Allison, No. 17 Civ. 9559 (SN), 2019 WL 4593613, at *4 (S.D.N.Y. Sept. 23, 2019).

Here, Cherotti appears to base his request for punitive damages on his allegation that Nemirofsky's conduct was knowingly "false and misleading" and "part of an ongoing scheme to induce unsuspecting people, like Cherotti, Kaylan Riley and the [] Lenders, to fund the lifestyle of Nemirofsky and his wife."  (ECF No. 89 ¶ 30).  While these allegations suggest that Nemirofsky defrauded five other individuals, i.e., the Lenders and Ms. Riley, into investing in Exphand, "there is no indication that their actions 'were so far-reaching as to have been 'aimed at the public generally.'"  Living the Dream, 2021 WL 4342700, at *9 (recommending denial of punitive damages where the plaintiff's allegations "show[ed] that Defendants' scheme only affected several individuals or entities who were interested in purchasing membership interests in [the defendant corporation]").  Thus, because Cherotti "seeks damages for a private wrong and has not offered any facts suggesting that [Defendants'] conduct was directed at the public generally[,]" punitive damages are inappropriate.  Centra Devs., 2018 WL 1445574, at *4. Accordingly, his request for punitive damages is denied.

### 4. **Pre-judgment Interest**

Cherotti requests an award of pre-judgment interest.  (See ECF Nos. 89 at 14 ¶ 3;

115 at 9).  In this diversity action, "state law governs the award of pre-judgment interest."  Sung

Taek Kwon v. Leg Res., Inc., No. 15 Civ. 9658 (RWL), 2018 WL 2316630, at *4 (S.D.N.Y. May 7,

2018) (citing Schipani v. McLeod, 541 F.3d 158, 164 (2d Cir. 2008)).  "Under New York choice of

law principles, which apply in this diversity action . . . , 'the allowance of prejudgment interest is

controlled by the law of [the state] whose law determined liability on the main claim.'"

Conceria Vignola SRL v. AXA Holdings, LLC, No. 09 Civ. 6684 (GBD) (DF), 2010 WL 3377476, at *4

(S.D.N.Y. Aug. 3, 2010) (quoting Entron, Inc. v. Affiliated FM Ins. Co., 749 F.2d 127, 131

(2d Cir.1984)), adopted by, 2010 WL 3385260 (S.D.N.Y. Aug. 23, 2010).  Accordingly, New York

law governs Cherotti's entitlement to prejudgment interest.

"Under New York law, 'a plaintiff who prevails on a claim for breach of contract is entitled

to prejudgment interest as a matter of right.'"  Midwood Junction v. Puerto del Sol Int'l Inv., S.A.,

No. 15 Civ. 5181 (RA) (SN), 2016 WL 8905357, at *4 (S.D.N.Y. Dec. 5, 2016) (quoting U.S. Naval

Inst. v. Charter Commc'ns, Inc., 936 F.2d 692, 698 (2d Cir. 1991)); see N.Y. C.P.L.R. § 5001(a)

(providing that "[i]nterest shall be recovered upon a sum awarded because of a breach of

performance of a contract, or because of an act or omission depriving or otherwise interfering

with title to, or possession or enjoyment of, property").  "The intent of awarding prejudgment

interest under CPLR § 5001 is to compensate an aggrieved party for damages due to the loss of

the use of money or its equivalent, or a loss of the opportunity to realize a fair return on that

money."  McCoy v. Goldberg, 810 F. Supp. 539, 547 (S.D.N.Y. 1993).

The applicable statutory pre-judgment interest rate is nine percent per annum.  See N.Y. C.P.L.R. § 5004.  "Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred."  N.Y. C.P.L.R. § 5001(b).  "Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."  Id.  "Courts commonly look to the median date between the 'earliest ascertainable date the cause of action existed and the date the action was filed.'"  Vazquez v. 142 Knickerbocker Enter., Corp., 409 F. Supp. 3d 81, 90 (E.D.N.Y. 2018) (quoting Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 93 (E.D.N.Y. 2012)).  "[S]ection 5001 grants courts wide discretion in determining a reasonable date from which to award pre-judgment interest."  Conway v. Icahn & Co., 16 F.3d 504, 512 (2d Cir. 1994).  Pre-judgment interest is computed as the "per diem" interest (principal*(0.09/365)) multiplied by the number of days in the pre-judgment interest period.  See Eurosteel Corp. v. M/V KOGGEGRACHT, No. 01 Civ. 7731 (DLC) (FM), 2003 WL 470575, at *4 (S.D.N.Y. Jan. 20, 2003), adopted by, 2003 WL 1872652 (S.D.N.Y. Apr. 11, 2003).

Cherotti requests an award of pre-judgment interest "from the date of filing of this action."  (ECF No. 155).  Because the Court is unable to ascertain from Cherotti's allegations the earliest date that his Breach of Contract Claim existed, the Court finds his proposal to calculate pre-judgment interest from the date he commenced this action to be reasonable.  Accordingly, Cherotti is entitled to an award of prejudgment interest at a rate of nine percent per year, i.e.,

$333.43 per day,[14] calculated from December 31, 2020 through the date of the Court enters judgment, i.e., a total of $323,427.10.[15]

### 5. Post-judgment interest

Cherotti also requests post-judgment interest.  (See ECF Nos. 89 at 14 ¶ 3).  In a diversity case such as this one, "'postjudgment interest is governed by federal statute.'"  Bleecker, 2013 WL 5951162, at *9 (quoting Schipani, 541 F.3d at 165); see 28 U.S.C. § 1961(a).  Given that this civil case was filed in a federal district court, the Court finds Cherotti is entitled to post-judgment interest calculated according to the requirements of 28 U.S.C. § 1961(a).

### 6. Attorneys' fees and costs

Cherotti requests that he be awarded his attorneys' fees and costs "incurred in conjunction with his action to set aside a conveyance make with intent to defraud[,]" i.e., his Fraudulent Conveyance Claim.  (ECF No. 115 at 6 (citing DCL §276); see ECF Nos. 89 at 14; 118-1; 120 ¶¶ 11–12).[16]  The DCL permits an award of attorneys' fees and costs to a party who "recovers judgment avoiding any [fraudulent] transfer or obligation[.]"  DCL § 276-a; see CBF Industria De Gusa S/A v. AMCI Holdings, Inc., No. 13 Civ. 2581 (PKC) (JLC), 2023 WL 185493, at *20 (S.D.N.Y. Jan. 13, 2023).  As discussed above, however, Cherotti's Fraudulent Conveyance Claim under the DCL fails as a matter of law.  (See § IV.B.2.c, supra).  Accordingly, because he has not "recover[ed] judgment avoiding a[] transfer or obligation[,]" DCL § 276-a, Cherotti's request for an award of attorneys' fees is DENIED.  See Waite, 2010 WL 4456955, at *6 (for claims accruing prior to

---

[14] $1,352,237.31*(.09/365).
[15] $333.43 per day * 970 days.
[16] The Court notes that "[t]here is no [] right to an award of attorney's fees on an ordinary claim of breach of contract."  U.S. Naval Inst., 936 F.2d at 698.

April 4, 2020, noting that, "[b]ecause a finding of actual intent to hinder, delay or defraud creditors is required before attorneys' fees will be awarded, Plaintiff's claim for reasonable attorneys' fees under [the DCL] is also dismissed."); Savitsky v. Mazzella, No. 98 Civ. 9051 (RWS), 2004 WL 2454120, at *2 n. 2 (S.D.N.Y. Nov.1, 2004) ("[P]ursuant to [the DCL], attorneys' fees can be recovered in an action to set aside a fraudulent conveyance [only] if the transfer 'is found to have been made by the debtor and received by the transferee with actual intent to delay, hinder or defraud the creditor."). Accordingly, Cherotti is not entitled to recover attorneys' fees or costs.

### V. <u>CONCLUSION</u>

For the reasons set forth above, the Motion is GRANTED IN PART and DENIED IN PART as follows:

1. The Motion is DENIED with respect to:

   a. the Unjust Enrichment, Conversion, Fraud, and Fraudulent Conveyance Claims; and

   b. Cherotti's requests for entry of an equitable lien or constructive trust and for awards of punitive damages, attorneys' fees, and costs.

2. The Motion is GRANTED with respect to the Breach of Contract Claim.

3. Defendants' Second Answer is STRICKEN.

4. Default judgment is ENTERED against Defendants, jointly and severally, and Cherotti is awarded (i) compensatory damages in the amount of $1,352,237.31; (ii) prejudgment interest in the amount of $323,427.10; and (iii) post-judgment interest pursuant to 28 U.S.C. § 1961.

Cherotti shall serve a copy of this Opinion and Order on Defendants directly, i.e., not through counsel, and shall file proof of service by **August 30, 2023**.

The Clerk of Court is respectfully directed to enter judgment in favor of Cherotti and against Defendants, jointly and severally, in the amount of $1,675,664.41, terminate ECF No. 115, and close this case.

Dated:      New York, New York
            August 28, 2023

SO ORDERED.

**SARAH L. CAVE**
**United States Magistrate Judge**